Darrell Wayne **BREIGHNER,**
Petitioner,

v.

Joseph **CHESNEY, et al., Respondents.**

Civ.A. No. 1:02–CV–1832.

United States District Court,
M.D. Pennsylvania.

Feb. 10, 2004.

Robert Niele Tarman, Harrisburg, PA, for Petitioner.

District Attorney of Dauphin County, Edward M. Marsico, Jr., The Attorney General of the State of Pennsylvania, Harrisburg, PA, for Respondents.

## MEMORANDUM

CONNER, District Judge.

Presently before the court is a petition for writ of habeas corpus (Doc. 1) in which petitioner, Darrell Wayne Breighner ("Breighner"), asserts that the Superior Court of Pennsylvania acted unreasonably in finding sufficient evidence to support his conviction for arson. Resolution of this issue requires the court to determine whether recent amendments to the federal habeas statute, 28 U.S.C. § 2254, mandate that federal courts accord a "presumption of correctness" to factual findings of a state court when the state court has previously considered and rejected the petitioner's claims for relief. For the reasons that follow, the court holds that the presumption of correctness does not apply in such cases.

With respect to the merits, petitioner's assertions of constitutional error by the state court are unavailing. Consequently, the court will deny petitioner his requested relief.

## I. *Statement of Facts*

At approximately 7:00 p.m. on January 2, 1999, a fire broke out in the rental offices of Briarcrest Garden, a large apartment complex in Hershey, Pennsylvania. The fire spread quickly and flames were soon visible outside of the building. Residents of the complex notified emergency personnel, who were able to contain the fire. (Doc. 8, Exs. A at 36, 82–85, B at 5–11). Following their examination of the scene, officials determined that the fire had been set intentionally and fueled through use of an accelerant. They also found that a burglary of funds held in the rental offices had occurred prior to the fire. (Doc. 8, Ex. C at 50–74). The incident occurred near the first of the month, when residents typically submitted their rental payments, and the outer door

showed no signs of forced entry. Consequently, officials postulated that the offender was likely someone with access to the rental offices and knowledge of office policies. (Doc. 8, Ex. C at 50–74).

After further investigation, state authorities brought charges of arson and burglary against Breighner, a maintenance worker at the apartment complex. Breighner had access to the rental offices as well as use and possession of a red maintenance truck owned by Briarcrest Garden. (Doc. 8, Ex. H). According to the prosecution, Breighner drove to the rental offices in the red truck, left it running while he went inside to commit the burglary and set the fire, and then drove quickly away from the rental offices to his own apartment in the same complex.

Several witnesses placed Breighner at the scene of the fire through circumstantial evidence. Marissa Mueller ("Mueller"), a resident of the complex, saw the red maintenance truck pull up and park in front of the rental offices "at about" 6:15 p.m., as she was walking to a local video store. (Doc. 8, Ex. B at 5–11). Upon her return, she saw "the same truck" quickly pull into another part of the complex, located a significant distance from the rental offices. Although Mueller estimated that she saw the truck the second time at "around quarter to 7:00 [p.m.], give or take five minutes," her estimates of time spent walking and browsing at the video store suggest that she may have seen the truck

closer to 7:00 p.m., or even slightly later.[1] (Doc. 8, Ex. B at 5–11). When she approached the rental offices, she noticed smoke coming from the building. Soon after, firefighters arrived to combat the blaze. (Doc. 8, Ex. B at 5–11).

Another resident, Robert C. Wohlmaker ("Wohlmaker"), testified that he saw the red maintenance truck parked outside the rental offices on the night in question. (Doc. 8, Ex. A at 82–85). He noticed that the lights of the truck were turned on and that the engine was running, but he could not see anyone inside. As he continued towards his own apartment, he "heard the engine rev up." (Doc. 8, Ex. A at 82–85). He turned and saw the red truck "go real fast" down the drive leading out of the complex. Although he could not estimate when he saw the truck, it was after night had fallen (approximately 5:30 p.m.[2]) but before firefighters arrived on the scene, shortly after 7:00 p.m. (Doc. 8, Ex. A at 82–85).

Testimony of other residents confirmed that the fire started at or shortly after 7:00 p.m. and that the flames were "real high" by 7:15 p.m. (Doc. 8, Ex. A at 36). Expert testimony established that the arsonist had used an accelerant available in the rental offices. The prosecution's expert concluded that the fire was started about ten or fifteen minutes before it became so intense that people would likely notice and report it to authorities. (Doc. 8, Ex. A at 81).

1. Mueller testified that it normally takes her about twenty minutes to reach the other end of the complex (where she saw the red truck the second time) from her apartment and less than fifteen minutes to reach the video store from that area of the complex. (Doc. 8, Ex. B at 5–11). Assuming that Mueller left her apartment "at about" 6:15 p.m., and that she spent "less than fifteen minutes" at the store, it is possible that she saw the truck for the second time after 7:00 p.m.

2. According to the United States Naval Observatory, "civil twilight" in Hershey, Pennsylvania, on January 2, 1999, began at 5:22 p.m. *See* Astronomical Applications Dep't, U.S. Naval Observatory, *Complete Sun and Moon Data for One Day,* at http://aa.usno.navy.mil/data/docs/RS OneDay.html (last modified Nov. 17, 2003); *see also* FED. R. EVID. 201 (stating that the court may take judicial notice of facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned").

Although Breighner did not take the witness stand, a police officer testified as to his investigative conversations with Breighner. According to the officer's testimony, Breighner had initially admitted to driving the red maintenance truck on the day in question. (Doc. 8, Ex. C at 50–74). Breighner had also made several comments about the expenses associated with his girlfriend's pregnancy and his need for additional money to meet other child support obligations. (Doc. 8, Ex. C at 50–74). In a subsequent session, the officer confronted Breighner with statements of other witnesses placing the red maintenance truck outside the rental offices before the fire started. After learning of these statements, Breighner suggested that he had been driving a different, blue truck on the day in question. When the officer persisted, Breighner "became extremely angry" and would not explain the change in his version of events. (Doc. 8, Ex. C at 50–74). Other witnesses at trial testified that they had, in fact, seen Breighner driving the red truck on January 2, 1999. However, none of them affirmatively placed him in the truck at the time of the fire. (Doc. 8, Ex. B at 53).

After several days of trial, the jury returned a verdict of guilty on the charges of arson and burglary. (Doc. 8, Ex. H). In its opinion in support of the verdict, the trial court recounted the evidence and concluded:

> [I]t is clear that [the] red maintenance truck was occupied by the perpetrator of the crime. Only one person places himself in this red truck at approximately the same time. There is only one person who had the opportunity to be in possession of this red truck at the time the crime occurred. That person is the defendant.

(Doc. 8, Ex. H). The court found Breighner's contention of insufficient evidence "to be without merit." (Doc. 8, Ex. H).

On appeal to the Superior Court of Pennsylvania, Breighner attempted to cast doubt on the credibility of several witnesses and argued that "no direct evidence" linked him to the scene of the fire. (Doc. 8, Ex. I). Although the superior court agreed that the prosecution was based on circumstantial evidence, it stated that "a conviction for arson may be based solely on circumstantial evidence." (Doc. 8, Ex. I). Crediting the testimony of Mueller and Wohlmaker, who "place[d] the red truck that was assigned to [Breighner] at the scene of the fire," the superior court held that sufficient evidence existed to permit the jury "to find that all elements of the crime charged have been proven beyond a reasonable doubt." (Doc. 8, Ex. I). The court upheld the conviction. The Supreme Court of Pennsylvania subsequently denied Breighner's petition for review. (Doc. 8, Ex. M).

On October 10, 2002, Breighner filed the instant habeas petition under 28 U.S.C. § 2254(d). He asserts (1) that "the [s]uperior [c]ourt's review resulted in a decision that was an unreasonable application of federal law" and (2) that the decision was "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." (Doc. 1). With respect to the first claim, Breighner argues that the superior court misapplied the "beyond a reasonable doubt" standard established in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), by "adopt[ing] the [C]ommonwealth's misrepresentation of the record" and by "treat[ing] the argument of insufficiency of the evidence as a credibility issue wherein the jury was free to believe or disbelieve the testimony of Wohlmaker and Mueller." (Doc. 1 ¶¶ 37–45). As to the second, petitioner contends that the testimony did not support the conclusions that Mueller and Wohlmaker saw the same red truck, that the red truck

was the one used by Breighner, or that the two witnesses saw it near the time of the fire. (Doc. 1 ¶¶ 45–59). Breighner neither requested nor received a new evidentiary hearing in the federal proceedings.

## II. *Discussion*

Amendments to the federal habeas statute enacted as part of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1218, severely restrict a federal court's authority to grant relief when a state court has previously considered and rejected the petitioner's claims. *See* 28 U.S.C. § 2254(d). Under the new provisions, a federal court may grant relief to a prisoner held pursuant to a state court judgment only when the state court's adjudication either:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* Only through one of these two avenues may prisoners successfully relitigate claims presented to and decided by the state court. *Id.*

A cursory examination of the two provisions shows that the first is concerned primarily with considerations of law while the second focuses on issues of fact. Relief under paragraph (1) is available when the state court has either misinterpreted the governing federal legal principles or has misapplied those principles to the facts of the case. *Id.* § 2254(d)(1). In contrast, paragraph (2) permits relief when the state court decision was "based on an unreasonable" finding of fact, regardless of the propriety of the legal analysis. *Id.* § 2254(d)(2).

The clarity of these provisions is confounded by subsection (e)(1):

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

*Id.* § 2254(e)(1). This provision attaches a presumption of correctness to any "determination of a factual issue" made by the state court. *Id.* To rebut this presumption, the burden is on the petitioner to present "clear and convincing evidence" to the contrary. *Id.* Because subsection (e)(1) facially places no limit on its application, the presumption of correctness arguably applies to the habeas court's review of claims brought under subsections (d)(1) and (d)(2).

Doing so, however, seems to result in a merger of analyses under the two subsections, an outcome inconsistent with the independent purpose of each provision. The effect is evident in cases such as the one *sub judice*, in which the petitioner claims, under subsection (d)(1), a misapplication of the legal "beyond a reasonable doubt" standard to a factual element of the case and, under subsection (d)(2), an unreasonable determination of the same fact. Assuming that the presumption of correctness applies, and the petitioner fails to offer "clear and convincing evidence" contrary to the state court's finding, it would seem that the state court's finding could constitute neither a misapplication of the "beyond a reasonable doubt" standard (since the fact is deemed correct beyond evidentiary doubt) nor an unreasonable determination of the fact (since a correct finding cannot be irrational). Whether the petitioner has rebutted the presumption of

correctness of subsection (e)(1) would become the dispositive inquiry in claims premised under both subsections (d)(1) and (d)(2). As the statute clearly prescribes two different avenues for relief, it seems incongruous that they merge as one in certain situations.

Logical anomalies such as this have driven significant debate among courts and commentators over the interplay between subsections (d) and (e)(1). *See generally* RANDY HERTZ & JAMES S. LIEBMAN, FEDERAL HABEAS CORPUS PRACTICE AND PROCEDURE § 20.2c (4th ed.2001); WAYNE R. LAFAVE ET AL., CRIMINAL PROCEDURE § 28.7(c) (2d ed.1999); Todd E. Pettys, *Federal Habeas Relief and the New Tolerance for "Reasonably Erroneous" Applications of Federal Law*, 63 OHIO ST. L.J. 731 (2002); Adam N. Steinman, *Reconceptualizing Federal Habeas Corpus for State Prisoners: How Should AEDPA's Standard of Review Operate After Williams v. Taylor?*, 2001 WIS. L. REV. 1493; Note, *Rewriting the Great Writ: Standards of Review for Habeas Corpus Under the New 28 U.S.C. § 2254*, 110 HARV. L. REV. 1868, 1874 (1997) [hereinafter *Rewriting the Great Writ*]. The divergence of viewpoints and the lack of any clear precedent[3] mandate that the question receives critical attention here. Therefore, before examining the merits of petitioner's claims, the court will analyze the standards governing subsections (d)(1), (d)(2), and (e)(1) of § 2254.

■ As always, plain meaning serves as the court's touchstone in this analysis. *See Carter v. United States*, 530 U.S. 255, 271, 120 S.Ct. 2159, 147 L.Ed.2d 203 (2000). Legislative intent and other extrinsic evidence of statutory purpose provide a secondary path to proper construction, supplementing a possibly ambiguous provision, but can never contravene the plain meaning of the text.[4] *See Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). Words and phrases should receive the same construction throughout the statute and should be interpreted, to the extent possible, to give full effect to all provisions. *See TRW Inc. v. Andrews*, 534 U.S. 19, 31, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001) ("It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'") (quoting *Duncan v. Walker*, 533 U.S. 167, 174, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001)).

## A. Subsection (d)(1) of § 2254

■ Section 2254(d)(1) provides the primary means by which district courts may oversee the application of federal legal principles by state courts in the criminal context. This provision permits the district court to grant an application for writ of habeas corpus in two circumstances: when the state decision is "contrary to" federal law or when the decision "involve[s] an unreasonable application" of federal law. 28 U.S.C. § 2254(d)(1). The Supreme Court has explained the distinc-

---

**3.** Hundreds of cases within the Third Circuit have recited the language of subsections (d) and (e)(1) without examining the relationship of the two provisions *inter se. See, e.g., Martini v. Hendricks*, 348 F.3d 360, 363 (3d Cir. 2003); *Porter v. Horn*, 276 F.Supp.2d 278, 295–96 (E.D.Pa.2003); *Pursell v. Horn*, 187 F.Supp.2d 260, 298–99 (W.D.Pa.2002); *Jacobs v. Horn*, 129 F.Supp.2d 390, 394 (M.D.Pa.2001); *see also, e.g., Blackwell v.*

*Graves*, 349 F.3d 529, 531 n. 4, 532 (8th Cir.2003); *Harris v. Kuhlmann*, 346 F.3d 330, 350 (2d Cir.2003); *Sanna v. Dipaolo*, 265 F.3d 1, 7 (1st Cir.2001).

**4.** *See infra* note 9 (discussing dearth of legislative history on amendments to § 2254 enacted by the Antiterrorism and Effective Death Penalty Act of 1996).

tion between the two prongs of subsection (d)(1) as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the . . . case.

*Williams v. Taylor*, 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Thus, this provision offers relief when the state court either misstates the applicable legal standard or misapplies the proper standard. *See id.*

### 1. *Interpretation of Subsections (d)(1) and (e)(1) of § 2254*

■■■ Despite the lack of an express restriction on the scope of subsection (e)(1), the structure of § 2254 demonstrates that the presumption of correctness cannot apply to claims premised on subsection (d)(1). The two parts of subsection (d) provide alternative avenues for a habeas petitioner to challenge an improper conviction. *See* 28 U.S.C. § 2254(d). Paragraph (1) exists to correct misstatements and misapplications of federal legal precedent, while paragraph (2) serves to remedy unreasonable findings of fact. *See id.; Williams*, 529 U.S. at 412–13, 120 S.Ct. 1495; *Wiggins v. Smith*, 539

U.S. 510, 123 S.Ct. 2527, 2539, 156 L.Ed.2d 471 (2003). Application of subsection (e)(1), with its focus on factual issues, interposes a factual component onto the legal analysis of subsection (d)(1), essentially duplicating the protection already offered by subsection (d)(2) and rendering the latter provision superfluous. Thus, subsection (e)(1) cannot be construed to apply to claims premised on subsection (d)(1). *See Duncan*, 533 U.S. at 174, 121 S.Ct. 2120; *see also Williams*, 529 U.S. at 412–13, 120 S.Ct. 1495 (applying subsection (d)(1) without mention of factual issues or subsection (e)(1)); *Benefiel v. Davis*, No. 03–1968, 357 F.3d 655, 2004 WL 178071, at *3 (7th Cir. Jan. 30, 2004) (suggesting that subsection (e)(1) applies only to habeas claims premised on subsection (d)(2)).

That the "presumption of correctness" of subsection (e)(1) is inapplicable does not mean that deference should not be accorded to the state court findings in claims arising under § 2254(d)(1). To the contrary, a reasonable reading of subsection (d)(1) requires the habeas court, in analyzing the state court's application of federal law, simply to accept as true the underlying facts as stated in the state court opinion.[5] *Cf.* Steinman, *supra*, at 1510–23 (discussing benefits of a close focus on state court opinions under subsection (d)(1)). This interpretation permits the court to conduct the rigorous legal analysis mandated by the provision and preserves the distinction between the two paragraphs of subsection (d).

■■■ Further, the absolute deference mandated by subsection (d)(1) to the factu-

---

5. Nothing in this discussion should be interpreted as addressing the analytical approach when the state court fails to issue a written opinion. *See Appel v. Horn*, 250 F.3d 203, 210 (3d Cir.2001) (finding subsection (d) inapplicable when state court fails to issue written opinion); *Hameen v. Delaware*, 212 F.3d 226, 247 (3d Cir.2000) (same). *See generally*

Steinman, *supra*, at 1510–23; Claudia Wilner, Note, *"We Would Not Defer to That Which Did Not Exist": AEDPA Meets the Silent State Court Opinion*, 77 N.Y.U. L.Rev. 1442 (2002) (discussing circuit split over application of subsection (d) to state decisions without opinion).

al findings of the state court does not preclude the habeas court from reviewing "mixed questions of law and fact," such as the voluntariness of a confession or whether a suspect is in "custody." *See Thompson v. Keohane,* 516 U.S. 99, 107–16, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995) (discussing distinctions between mixed and pure issues of fact); *see also Matteo v. Superintendent S.C.I. Albion,* 171 F.3d. 877, 891 (3d Cir.1999). As the Supreme Court recognized prior to the adoption of the Antiterrorism and Effective Death Penalty Act, although such issues are nominally labeled "factual," their close link to federal statutory and constitutional standards requires them to be reviewed as legal questions. *See Thompson,* 516 U.S. at 107–16, 116 S.Ct. 457. For example, while the environmental circumstances of an interrogation are typically factual issues, the determination of whether a person is in "custody" is a "mixed question of law and fact," subject to a legal analysis. *See id.* Thus, the recognition that paragraph (1) requires acceptance of the state court's determinations of "historical" facts will work no injustice towards either party to the habeas proceeding. *See Wiggins,* —— U.S. at ——, 123 S.Ct. at 2539; *Thompson,* 516 U.S. at 107–16, 116 S.Ct. 457; *see also* U.S. CONST. art. I, § 9, cl. 2.

Accordingly, the court holds that, although the presumption of correctness of subsection (e)(1) does not apply, subsection (d)(1) requires federal habeas courts to accept as true the state court's findings of issues of fact. In claims premised on this subsection, federal courts should review the state court's legal analysis without additional consideration of whether its underlying determinations of fact may be erroneous or unreasonable.

### 2. *Application of § 2254(d)(1)*

 To determine whether the state court's application of a federal legal standard was "objectively unreasonable," the habeas court's focus is not on the conclusions reached by the state court, but on the scope of the state court's review and the reasoning employed. *Williams,* 529 U.S. at 409, 120 S.Ct. 1495; *Matteo,* 171 F.3d at 879, *cited with approval in Werts v. Vaughn,* 228 F.3d 178, 196 (3d Cir.2000); *Hurtado v. Tucker,* 245 F.3d 7, 16 (1st Cir.2001). A decision may be deemed unreasonable if it either fails to consider all of the factors relevant to the issue or evinces an analytical error in its conclusions. *See id.* However, the federal court may not grant relief under subsection (d)(1) merely because it disagrees with the state court's application of the rule or would find a constitutional violation on the same facts.[6] *See Williams,* 529 U.S. at 408–09, 120 S.Ct. 1495.

 The constitutional standard alleged to have been unreasonably applied in this case was announced by the Supreme Court in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979):

> [T]he due process guaranteed by the Fourteenth Amendment [mandates] that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof—defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense.

---

**6.** As the First Circuit Court of Appeals cogently explained in an opinion examining the standard of review under the "unreasonable application" prong of subsection (d)(1):

> Habeas review involves the layering of two standards. The habeas question of whether the state court decision is objectively unreasonable is layered on top of the underlying standard governing the constitutional right asserted.... In a particular habeas case, it may be useful, although not mandatory, to review first the underlying constitutional issue ....

*Hurtado,* 245 F.3d at 16.

*Id.* at 316, 99 S.Ct. 2781. Under this rule, a criminal conviction is constitutionally valid only if, "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319, 99 S.Ct. 2781. Although direct evidence may be more probative of a fact, circumstantial evidence alone may suffice for a finding of guilt beyond a reasonable doubt. *Id.* at 324–25, 99 S.Ct. 2781; *see also Fed. Power Comm'n v. Fla. Power & Light Co.,* 404 U.S. 453, 469 & n. 21, 92 S.Ct. 637, 30 L.Ed.2d 600 (1972) ("[E]ven in criminal cases, guilt beyond a reasonable doubt often can be established by circumstantial evidence.") (quoting *Ind. & Mich. Elec. Co. v. Fed. Power Comm'n,* 365 F.2d 180, 184 (7th Cir.1966)).

 Contrary to Breighner's argument, a review of the state court's opinion in this case reveals adherence to the constitutional test enunciated in *Jackson* and a proper review of the relevant facts under that standard. The superior court recited nearly verbatim the *Jackson* standard quoted above. (Doc. 8, Ex. I at 4). And it accurately recounted the evidence presented to the jury. Noting that Breighner had offered conflicting accounts of his whereabouts on the day in question and had unique access to both the truck and rental offices, the court held that the jury could rationally find Breighner guilty of arson and burglary. The court reasoned that the testimony of Mueller and Wohlmaker established that the red maintenance truck was parked outside the rental offices just before the fire started and that it sped away from the scene after the fire had been set. Other evidence, including Breighner's own admission, placed him in the truck on the day of the fire. Therefore, the jury could rationally infer that Breighner committed the robbery and started the fire.

With this review of the state court's analysis, the court cannot say either that the state court decision resulted in a constitutional violation or that the opinion represented an "objectively unreasonable" application of the *Jackson* standard. *See Williams,* 529 U.S. at 408–09, 120 S.Ct. 1495; *Hurtado,* 245 F.3d at 16. The state court reviewed the relevant facts and reasonably applied the governing federal standard. Nothing more is required under § 2254(d)(1). *See Williams,* 529 U.S. at 408–09, 120 S.Ct. 1495; *Hurtado,* 245 F.3d at 16.

**B. *Subsection (d)(2) of § 2254***

 Unlike its counterpart, paragraph (2) of § 2254(d) allows federal courts to review factual determinations of state courts to ensure that all convictions are based on constitutionally sufficient evidence. *See* 28 U.S.C. § 2254(d)(2). Subsection (d)(2) permits relief when the state court "decision . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* This provision essentially requires the district court to step into the shoes of an appellate tribunal, examining the record below to ascertain whether sufficient evidence existed to support the findings of fact material to the conviction. *See id.; see also id.* § 2254(f) (providing for production of the record before the state court). To warrant relief under subsection (d)(2), the petitioner must show (1) that an "unreasonable determination" of a factual issue was made and (2) that the state court decision was "based on" this improper finding. *See id.* § 2254(d)(2); *see also Parker v. Sec'y for Dep't of Corr.,* 331 F.3d 764, 786 (11th Cir.2003) (stating that relief is not warranted when, even in light of factual error, result of proceeding would have been the same); *cf. Ashe v. Swenson,* 397 U.S. 436, 444, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970)

(examining "essential· to the prior judgment" prong of issue preclusion analysis).

### 1. *Interpretation of Subsections (d)(2) and (e)(1) of § 2254*

 Despite their common focus on factual issues, subsections (d)(2) and (e)(1) each establish a burden of production that is independent, if not mutually exclusive, from the other. Subsection (d)(2) limits admissible evidence to the state court record and places the initial burden of producing that record on the petitioner. 28 U.S.C. § 2254(d)(2), (f); *see also Price v. Vincent,* 538 U.S. 634, 123 S.Ct. 1848, 1853, 155 L.Ed.2d 877 (2003) (stating that burden of persuasion always lies on habeas petitioner). If applied to subsection (d)(2) claims, subsection (e)(1) would impose an additional, nugatory burden on the petitioner to produce supplemental evidence of a "clear and convincing" character. *See* 28 U.S.C. § 2254(e)(1); *see also id.* § 2254(d)(2) (restricting court's review to "evidence presented in the State court proceeding"); FED. R. EVID. 402 (excluding evidence not relevant to claim). Thus, reading subsection (e)(1) to apply to claims arising under subsection (d)(2) renders the former superfluous.

 More fundamentally, however, applying subsections (d)(2) and (e)(1) in the same case risks establishing an irrebuttable presumption against the petitioner. *See Vlandis v. Kline,* 412 U.S. 441, 446, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973) ("Statutes creating permanent irrebuttable presumptions have long been disfavored under the Due Process Clauses of the Fifth and Fourteenth Amendments."). The phrase "clear and convincing evidence" generally connotes affirmative evidence in support of the proponent's position. *See, e.g., Cruzan ex rel. Cruzan v. Dir., Mo. Dep't of Health,* 497 U.S. 261, 285 n. 11, 110 S.Ct. 2841, 111 L.Ed.2d 224 (1990). The mere absence of proof for the opposing contention is generally insufficient to meet this high burden; rather, the party must present evidence showing that the contrary argument is wrong. *See id.; Wiggins,* 539 U.S. at ——, 123 S.Ct. at 2539. In habeas cases governed by subsection (d)(2), however, the court's review is restricted to the state record of proceedings, and the petitioner is precluded from offering additional evidence to rebut the state court's findings.

Thus, a court attempting to apply the presumption of correctness to claims premised on subsection (d)(2) is confronted with a quandary. If the record is devoid of evidence in support of the fact, the state court's factual finding would seem to be "unreasonable" under subsection (d)(2). Yet, the same fact is accorded a presumption of correctness under subsection (e)(1). The court must decide between two equally unappealing alternatives: grant relief, ignoring subsection (e)(1), or deny relief, ignoring subsection (d)(2). Application of both subsections not only renders one superfluous, it places them in direct conflict. Therefore, subsections (d)(2) and (e)(1) simply cannot apply to the same case; they are mutually exclusive.

 Separating the standards finds additional support in other provisions of § 2254. Subsection (f), which applies to cases brought under subsection (d)(2),[7] places the initial burden on the petitioner to produce the state court record. However, if the petitioner is unable to do so (due to indigency or other factors), subsection (f) shifts this burden to "the State." 28 U.S.C. § 2254(f). "If the State cannot pro-

---

**7.** *Compare* 28 U.S.C. § 2254(f) (applying when "applicant challenges the sufficiency of the evidence adduced in [a] State court proceeding to support the State court's determination of a factual issue") *with id.* § 2254(d)(2) (applying when applicant challenges factual determination based on state court record).

vide ... the record, then the court shall determine under the existing facts and circumstances what weight shall be given to the State court's factual determination." *Id.* In other words, if the state fails to meet this burden, subsection (f) permits the court to accord no weight to the state court's factual finding even though the petitioner has not produced *any* evidence in opposition to it. *See id.* This contradicts subsection (e)(1), which, if applicable, would require the court to presume the state court's finding correct in the absence of contrary evidence from the petitioner. *See id.* § 2254(e)(1).

■ Interpreting the subsections as mutually exclusive also flows from a natural reading of the two provisions in the context of the statute. Subsection (d) applies when the state court has already adjudicated the claims at issue, meaning a federal evidentiary hearing is generally unnecessary. *See id.* § 2254(d). In contrast, subsection (e) deals primarily with situations in which a new evidentiary hearing is warranted, permitting the parties to present evidence outside the state court record. *See id.* § 2254(e)(2). In these circumstances, it is reasonable to attach a presumption of correctness to the state court findings, based on the state court record, and to require the petitioner to produce affirmative evidence to the contrary of those findings. Only by separat-

ing the burdens imposed under subsections (d)(2) and (e)(1) may courts give full effect to both provisions.[8]

This construction also tracks the allocation of burdens established in the pre-amendment version of § 2254.[9] Subsection (d)(8) of the previous version of the statute encompassed two parts. The first part permitted the court to overturn a factual finding if it was not "fairly supported" by the record of the state court proceedings. 28 U.S.C. § 2254(d)(8) (1995). Like subsection (d)(2) of the current statute, this provision did not speak of a "clear and convincing" burden on the petitioner, but required only that the petitioner produce the state court record.[10] *See id.* In contrast, the second part of subsection (d)(8) of the pre-amendment statute, like current subsection (e)(1), addressed primarily new evidentiary hearings and placed an affirmative burden on the petitioner to produce "convincing" evidence in support of his or her position. *See id.* The close similarity between the previous version and the current statute suggests that no change in the allocation of burdens was intended. *Lorillard v. Pons,* 434 U.S. 575, 581, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978) ("[W]here ... Congress adopts a new law incorporating sections of a prior law, Congress normally can be presumed to have had knowledge of the ... incorporated law, at least insofar as it affects the

---

**8.** This conclusion also supports separation of the analyses required under subsections (d)(1) and (e)(1).

**9.** The congressional debates and reports on the Antiterrorism and Effective Death Penalty Act of 1996 are rather unilluminating as to Congress's intent in amending these subsections. As the name of the Act implies, most debate centered on provisions dealing with restrictions on multiple appeals and limitations on the time for filing habeas petitions for capital convictions. *See, e.g.,* 142 CONG. REC. H3605–04 (daily ed. Apr. 18, 1996). The conference report also fails to discuss the

change to the applicable burdens in habeas review. H.R. CONF. REP. No. 104–518 (1996), U.S.Code Cong. & Admin.News 1996, pp. 924, 944. Although clearly not dispositive, the lack of discourse on the topic suggests that a significant alteration of the applicable burdens was not intended.

**10.** An exception in the previous version of § 2254 required the state to produce the state record if the applicant was "indigent" or otherwise "unable" to do so. 28 U.S.C. § 2254(e) (1995). This provision was copied verbatim as subsection (f) of the new version of § 2254. *See* 28 U.S.C. § 2254(f) (2002).

new statute."). Thus, as in the previous version, the requirement to produce "clear and convincing evidence" should not apply to claims brought under subsection (d)(2).

■ For all of these reasons, the court will interpret subsection (e)(1) as inapplicable to proceedings under subsection (d)(2). The court acknowledges, however, that other courts and commentators have reached different conclusions. Several courts, primarily in the Fifth Circuit, have read the provisions together to form a single standard, requiring the petitioner to show by clear and convincing evidence that the state court acted unreasonably in reaching its decision. *See Miller–El v. Johnson*, 261 F.3d 445, 449–52 (5th Cir. 2001), *rev'd sub nom. Miller–El v. Cockrell*, 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). The Supreme Court recently rejected this interpretation, holding that the Fifth Circuit's approach improperly "merges the independent requirements of [§ ] 2254(d)(2) and (e)(1)." *Cockrell*, 537 U.S. at 340–41, 123 S.Ct. 1029. However, the Court did not rule on whether the standard of subsection (e)(1) could yet apply as a separate standard to claims brought under subsection (d)(2): that is, whether the petitioner should be required to overcome the presumption of correctness to prevail in claims under subsection (d)(2).[11] *See id.* at 359, 123 S.Ct. 1029 (Thomas, J., dissenting) ("[T]he Court ... does not actually purport to interpret the text of § 2254(e)(1).").

Professors Randy Hertz and James S. Liebman propose, based on comparisons between the pre- and post-amendment versions of the statute, that subsections (d)(2) and (e)(1) provide alternative means for granting habeas relief with respect to claims that were previously adjudicated by the state court. HERTZ & LIEBMAN, *supra*, § 20.2c. Under this interpretation, subsection (d)(2) permits relief if a finding was either procedurally or substantively unreasonable, whereas subsection (e)(1) offers relief if the petitioner can prove that the finding is otherwise "clearly erroneous"— even if the factual determination "is not unreasonable" under subsection (d)(2). *Id.* § 20.2c, at 830–31 (internal quotations omitted); *see also Leka v. Portuondo*, 76 F.Supp.2d 258, 276–77 (E.D.N.Y.1999) (applying without adopting standard), *rev'd on other grounds*, 257 F.3d 89 (2d Cir.2001); LAFAVE ET AL., *supra*, § 28.7(c).

While the previous version of § 2254 may support this construction, the current version clearly does not. The concept of two separate sources of habeas relief conflicts directly with subsection (d) of the amended version of the statute, which states that "[a]n application for a writ of habeas corpus ... *shall not be granted* with respect to any claim that was adjudicated on the merits in State court proceedings *unless* " either paragraph (1) or (2) is satisfied. *See* 28 U.S.C. § 2254(d) (emphasis added). Any interpretation that permits the court to grant relief solely on the

11. Resolving the proper interpretation of subsections (d)(2) and (e)(1) was unnecessary based on the Court's holding that the Court of Appeals lacked jurisdiction to consider the merits of the action. *See Cockrell*, 537 U.S. at 342, 123 S.Ct. 1029. Courts of appeals considering an application for a certificate of appealability are empowered to decide whether the petitioner has made a "substantial showing of the denial of a constitutional right," not whether the habeas petition itself should be granted. 28 U.S.C. § 2253(c);

*Cockrell*, 537 U.S. at 342–43, 123 S.Ct. 1029; *see also infra* note 14. Jurisdiction over the merits of a claim under § 2254 arises only after the certificate has issued, and must be addressed in a subsequent proceeding. *Cockrell*, 537 U.S. at 342–43, 123 S.Ct. 1029. *But cf. id.* at 359, 123 S.Ct. 1029 (Thomas, J., dissenting) (arguing that subsection (e)(1) applies equally to the merits of a claim under § 2254 and to the application for a certificate of appealability).

basis of subsection (e)(1) contravenes this restrictive language.

Finally, some commentators suggest that subsection (e)(1) applies only to the court's review of individual, "basic" factual determinations while subsection (d)(2) applies "to the review of the entire factual basis on which the state court decision rested." *Rewriting the Great Writ, supra,* at 1874; *cf. Sanna v. Dipaolo,* 265 F.3d 1, 7 (1st Cir.2001) (stating that subsection (e)(1) applies to "basic, primary, or historical facts") (quoting *Bryson v. Ward,* 187 F.3d 1193, 1211 (10th Cir.1999)). This approach interprets the phrase "determination of a factual issue" in subsection (e)(1) as being more limited in applicability than the phrase "determination of the facts" in subsection (d)(2). The former permits consideration only of individual factual determinations, primarily "historical" facts forming the narrative of the underlying events; the latter permits review of the "ultimate" factual conclusions of the court.[12] *See Rewriting the Great Writ, supra,* at 1874.

■ This interpretation cuts too fine a distinction between the language of subsections (d)(2) and (e)(1). A paramount canon of statutory construction is that words and phrases should be accorded the same meaning throughout the same section, and generally across the whole act. *E.g., Owasso Indep. Sch. Dist. No. I–011 v. Falvo,* 534 U.S. 426, 434, 122 S.Ct. 934, 151 L.Ed.2d 896 (2002). The only relevant variation between the phrases quoted above is the replacement of "the facts" with "a factual issue." At the risk of cliché, identifying the contrast between these terms is noting a distinction without

a difference. A "determination of facts" is a resolution of factual issues, and a "determination of a factual issue" is a resolution of a fact. No principled distinction may be made between the two phrases, and they should not be imbued with different meanings.

■ The only theoretically sound interpretation is that subsection (e)(1) does not apply to claims under subsection (d)(2). This construction satisfies the Supreme Court's admonition against "merg[ing]" the requirements of the two provisions and permits courts to give full effect to both subsections. *See Cockrell,* 537 U.S. at 340–41, 123 S.Ct. 1029. The federal habeas court's analysis under this subsection is limited to the record available to the state trial court—and reproduced in federal proceedings by the petitioner or "the State"—and encompasses two questions: (1) whether a factual determination of the state court was "unreasonable" in light of the state record, and (2) whether the state court's decision was "based" on that unreasonable determination. *See* 28 U.S.C. § 2254(d)(2), (f). As this approach comports with both the text and purpose of the statute, the court will adopt it here.

### 2. *Application of § 2254(d)(2)*

■ Like the "unreasonable application" prong of paragraph (1), a factual determination should be adjudged "unreasonable" under paragraph (2) only if the court finds that a rational jurist could not reach the same finding on the basis of the evidence in the record. 28 U.S.C. § 2254(d)(2); *Porter v. Horn,* 276 F.Supp.2d 278, 296 (E.D.Pa.2003); *see also*

---

**12.** This interpretation seems to have grown from a conflation of the elements of a claim under § 2254(d)(2), apparently importing the "based on" element into the "determination of the facts" element. Advocates of this approach conclude that "determination of the

facts" in subsection (d)(2) refers to the court's ultimate conclusions, while "determination of a factual issue" in subsection (e)(1) applies to "basic" or "historical" facts. *See Rewriting the Great Writ, supra,* at 1874.

*Torres v. Prunty,* 223 F.3d 1103, 1107–08 (9th Cir.2000); *cf. Jackson,* 443 U.S. at 316, 99 S.Ct. 2781. Mere disagreement with an inferential leap or credibility judgment of the state court is insufficient to permit relief. *Porter,* 276 F.Supp.2d at 296; *see also Williams,* 529 U.S. at 408–09, 120 S.Ct. 1495; *Hurtado,* 245 F.3d at 16. Only when the finding lacks evidentiary support in the state court record or is plainly controverted by evidence therein should the federal habeas court overturn a state court's factual determination. *Porter,* 276 F.Supp.2d at 296; *see also Williams,* 529 U.S. at 408–09, 120 S.Ct. 1495.

■ Based upon the evidentiary record, the court cannot say that the superior court erred in finding that Mueller and Wohlmaker saw Breighner's red maintenance truck at the scene of the fire. Both witnesses testified unequivocally that they saw a red maintenance truck, which they identified as the one used by Breighner, parked outside the rental offices. Although Wohlmaker could not provide an estimate of the time at which he saw the truck, his testimony established that it was sometime between 5:30 p.m. and shortly after 7:00 p.m., when the fire erupted. Considered with Mueller's estimations of the time in which she was in the area— from 6:15 p.m. to about 7:15 p.m.—it is reasonable to conclude that both people saw the same truck in the same area

around the time the fire started. Conflicting testimony offered by the two witnesses as to the position of the parked truck does not contravene the ultimate conclusion that Breighner's red truck was parked outside the rental offices at this time. The state court could rationally discount opposing evidence offered by Breighner as to his whereabouts, particularly in light of his contradictory accounts, and find the testimony of the two witnesses credible, as the jury had already done. Because the state court's determination was not unreasonable in light of the evidence presented, habeas relief is unavailable under § 2254(d)(2).[13]

### III. *Conclusion*

■ Although the presumption of correctness of subsection (e)(1) does not apply to claims arising under either subsection (d)(1) or (d)(2) of § 2254, the habeas statute mandates a highly deferential posture by federal courts reviewing claims previously adjudicated by state courts. Contrary to petitioner's contentions, the state court's decision in this case was reasonable both in its application of federal law and in its determination of factual issues. Thus, the court must deny the petition for writ of habeas corpus in its entirety. For the reasons discussed above, the court also finds that petitioner has not "made a substantial showing of the denial of a constitutional right," and will refuse to issue a certificate of appealability.[14]

13. The conclusion that the state court's determination of the facts was reasonable renders it unnecessary to address whether the state court's decision was "based on" that determination. *See* 28 U.S.C. § 2254(d)(2).

14. Under § 2253, "an appeal may not be taken to the court of appeals" from the final order in a proceeding under § 2254 "[u]nless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1); *see also Williams v. United States,* 150 F.3d 639, 640 (7th Cir.1998) (" '[C]ircuit justice or judge' in § 2253(c)(1) should be read as '(cir-

cuit justice) or judge' rather than 'circuit (justice or judge).' "). Although Federal Rule of Appellate Procedure 22 requires district courts to consider the issuance of a certificate after a notice of appeal is filed, the rule, like § 2253, does not preclude the court from deciding the issue as part of its final order on the habeas petition itself. *See* FED. R. APP. P. 22. Indeed, because the court's familiarity with the case is at its peak at the time of the final order, it would seem the best time to consider whether "the applicant has made a substantial showing of the denial of a consti-

An appropriate order will issue.

### ORDER

AND NOW, this 10th day of February, 2004, upon consideration of the petition for writ of habeas corpus (Doc. 1), and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. The petition for writ of habeas corpus (Doc. 1) is DENIED.

2. The Clerk of Court is directed to CLOSE this case.

3. A certificate of appealability is DENIED.

tutional right," establishing entitlement to a certificate. *See* 28 U.S.C. § 2253(c)(2). The court follows this approach here.