**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 10, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

HOMEWARD BOUND, INC., on
behalf of its members,

     Plaintiff-Appellant,

v.

OKLAHOMA HEALTH CARE
AUTHORITY; OKLAHOMA
DEPARTMENT OF HUMAN
SERVICES; HISSOM MEMORIAL
CENTER; GATESWAY
FOUNDATION, INC.; PANEL
LIAISON; DEPARTMENT OF
REHABILITATION SERVICES;
JOSEPH A. McCORMICK, Trustee,

    Defendants-Appellees.

No. 05-5023
(Northern District of Oklahoma)
(D.C. No. 85-C-437-E)

---

**ORDER AND JUDGMENT**[*]

---

Before **MURPHY**, **ANDERSON**, and **O'BRIEN**, Circuit Judges.

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

## I. Introduction

This appeal arises out of a class action suit brought in 1985 by Plaintiff-Appellant, Homeward Bound, Inc., challenging the conditions at The Hissom Memorial Center, a state-administered institution for persons with severe mental disabilities. In settlement of the litigation, the parties entered into a Consent Decree (the "Decree") requiring deinstitutionalization of class members and provision of state-sponsored community services and supports. The district court's active supervision of the Decree terminated in 2004 after a finding of substantial compliance. Under the terms of the Decree, however, the provisions pertaining to the maintenance of a system of community services and supports were to remain in effect permanently. Accordingly, once Defendants achieved substantial compliance, the district court entered a permanent injunction requiring Defendants to maintain the system of services established under the Decree. The injunction also required that Homeward Bound demonstrate a systemic violation that injured the class as a whole to succeed in any enforcement proceeding.

On appeal, Homeward Bound challenges the injunction's "class as a whole" requirement. We assert jurisdiction pursuant to 28 U.S.C. § 1291. Because the injunction improperly modified the Decree, we **reverse** and **remand** with instructions for the district court to consider whether the modification is warranted by changed circumstances. In the absence of a finding of changed

circumstances, the portion of the Amended Permanent Injunction requiring injury to the class as a whole should be vacated.

## II. Background

Homeward Bound, Inc. and six mentally disabled individuals (collectively "Homeward Bound") instituted a class action suit in 1985 against various Oklahoma state agencies and The Hissom Memorial Center ("Hissom"), a state-owned-and-operated institution for persons with severe mental disabilities.[1] The suit alleged class members residing at Hissom were being abused, neglected, and unnecessarily restrained; denied adequate food, clothing, medical care, and habilitative services; and discriminated against based upon the severity of their disabilities. Homeward Bound sought, *inter alia*, placement in the least-separate, most-integrated community setting appropriate to each class member's needs.

After a bench trial, the district court entered judgment for Homeward Bound. The district court found Hissom could not be the least restrictive environment for any class member and ordered deinstitutionalization. While the case was on appeal to this court, Homeward Bound and Defendants entered into a

---

[1]The class was certified pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure. It includes all persons residing at Hissom at the time suit was filed; persons who became clients during the pendency of the action; persons residing at home who were clients of Hissom within five years preceding the suit; and persons who were transferred from Hissom to skilled nursing facilities or intermediate care facilities, but remain Defendants' responsibility. At the time the suit was initiated, approximately six hundred mentally disabled persons were residing at Hissom. Because Hissom closed permanently in 1994, the class is no longer open.

consent decree. The purpose of the Decree was to transition class members from the institutional setting at Hissom into community placements where they could live with state-provided supports and services. To this end, the Decree required Defendants, in consultation with class members and their parents or guardians, to develop an exit Individual Habilitation Plan for each member of the class. The Individual Habilitation Plan was to evaluate a range of residential placement options and identify needed community services and supports based on each class member's individual needs. The Decree established a series of deadlines for transferring class members into community settings. The Decree also contained provisions requiring a system of independent case management, a quality assurance program, staff training, and a phase-down of operations at Hissom.

To oversee Defendants' implementation of their duties, the Decree established a review panel composed of three mental-disability experts. The Decree tasked the review panel with resolving allegations of systemic non-compliance that affected more than one class member. Disputes involving placement and services for a single class member were to be resolved, according to the terms of the Decree, through state administrative review and appeal procedures. If those procedures failed, the dispute would be resolved by a hearing officer appointed by the district court. Decisions of the review panel and hearing officer were subject to further review by the district court.

The Decree also contained termination provisions which provided, in relevant part:

> 1. Within three (3) months following advice from defendants of the placement in community living arrangements of the last [class member] required by this Decree to be transferred from an institutional setting, the Review Panel shall file with the Court and the parties a final report, which will evaluate community placements and compliance with this Decree. . . . If, upon review of the report and any comments of the parties, the Court is satisfied that defendants have complied with the Decree, . . . it shall terminate its active supervision at that time.

> 2. The provisions of this Decree pertaining to the maintenance of a system of community services and supports shall remain in effect as long as the Department maintains a program of assistance for the mentally retarded.

Appellants' App. at 322–23. The district court approved the Decree and for the next fifteen years actively supervised its implementation.

Defendants filed a motion in 1998, and an amended motion in 2001, seeking termination of the Decree. Defendants indicated the last class member had been transitioned into the community and requested a finding of substantial compliance with the Decree. In support of their contention that the Decree should be terminated, Defendants argued the first paragraph of the Decree's termination provision expressly contemplates termination upon a finding of substantial compliance. Alternatively, Defendants asserted the Decree should be terminated pursuant to Rule 60(b)(5) of the Federal Rules of Civil Procedure, which permits courts to relieve a party from an order if it "has been satisfied, released, or

discharged . . . or it is no longer equitable that the [order] should have prospective application." Defendants argued the Decree was intended to remedy past illegal conduct, not ensure future, ongoing compliance with federal law. Thus, they contended, continued enforcement of the Decree after a finding of substantial compliance would be inequitable.

The district court denied the motion, expressly refusing to modify or terminate the Decree. Instead, the district court interpreted the second paragraph of the Decree's termination provisions as imposing a permanent obligation on Defendants to maintain a system of community services and supports for class members. The court indicated it would enter a permanent injunction requiring maintenance of the system if and when Defendants substantially complied with the terms of the Decree.

The district court subsequently determined Defendants had achieved substantial compliance and terminated its active supervision. The court ordered the parties to draft a mutually agreed upon injunction consistent with the permanent obligations imposed by the Decree. When the parties were unable to reach an agreement, the district court drafted an injunction without the parties' consent. The court indicated the purpose of the injunction was to "memorialize the agreements of the parties." Appellants' App. at 375–76. The Permanent Injunction (the "Injunction") issued by the district court required Defendants to "continue the System of Supports contemplated by the Consent Decree and

-6-

Related Documents." Appellants' App. at 380. It also expressly incorporated the obligations and agreements contained in the Decree. The Injunction further provided:

> If Defendants fail to offer or make available to class members this system of community based services and supports, but otherwise continue to maintain a program of assistance to persons with mental retardation, Plaintiffs may seek enforcement of the Permanent Injunction before this Court. In any such enforcement proceeding, Plaintiffs must demonstrate that Defendants have failed to make available the System of Supports contemplated by the Consent Decree and Related Documents and that the violation or violations have injured the Plaintiff Class as a whole. In other words, a violation of this Permanent Injunction must be systemic in order to be actionable.

Appellants' App. at 381–82.

Homeward Bound filed a motion to amend the Injunction. It asked the district court to set forth Defendants' permanent obligations in more explicit detail instead of relying on vague references to the Decree and other documents. Homeward Bound also asserted enforcement of the Injunction should not be limited to violations that injure the class as a whole. The district court subsequently amended the Injunction, deleting references to the Decree and other documents and inserting language from the text of the Decree in their place. The enforcement provision, however, remained intact. On appeal, Homeward Bound asserts the Amended Permanent Injunction ("API") improperly modified the Decree and rendered Defendants' obligations under the Decree unenforceable by conditioning enforcement on injury to the class as a whole.

-7-

## III. Discussion

### A.     Jurisdiction

In furtherance of this court's duty to satisfy itself of its power to adjudicate every case presented, we requested supplemental briefing on jurisdiction. *Cisneros v. ABC Rail Corp.*, 217 F.3d 1299, 1302 (10th Cir. 2000).  Federal court jurisdiction extends only to "Cases" or "Controversies."  U.S. Const. art. III, § 2, cl. 1.  A case or controversy does not exist unless the party requesting a ruling from this court has standing.  *Raiser v. United States*, 325 F.3d 1182, 1183 (10th Cir. 2002).  To establish standing to appeal, an appellant must demonstrate some injury caused by the judgment below.  *Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 854 (10th Cir. 1993); *see also Sierra Club v. Babbitt*, 995 F.2d 571, 575 (5th Cir. 1993).

After considering the parties' supplemental briefs and undertaking an independent review of the issue, this court has determined Homeward Bound does have standing to appeal.  To enforce the API, Homeward Bound must demonstrate a systemic violation that injures the class as a whole.  Homeward Bound alleges the "class as a whole" requirement alters the permanent obligations imposed on Defendants by the Decree because the Decree contemplates continuing redress for violations that injure less than all of the class.  Thus, Homeward Bound asserts the API effectively modified the Decree and injured class members by limiting their ability to enforce rights provided by the Decree.  Because this alleged injury

is not frivolous and the injury would be redressed if Homeward Bound were successful in its appeal, Homeward Bound has standing. *Cf. Owasso Indep. Sch. Dist. No. I-011 v. Falvo*, 534 U.S. 426, 431 (2002).

**B.    Modification of the Consent Decree**

Relying on the language of the Decree and the intent of the parties, the district court concluded the Decree imposed permanent obligations on Defendants. Specifically, it determined the second paragraph of the Decree's termination provisions constituted a permanent injunction requiring Defendants to maintain a system of community services and supports for class members. Thus, while some of Defendants' obligations toward class members under the Decree ceased upon a finding of substantial compliance, others continued so long as Defendants maintained a program of assistance for the mentally disabled. The district court entered the API in an effort to clarify which obligations were permanent.

The API requires Defendants to maintain the placement of class members in appropriate community settings and to maintain a system of community services and supports appropriate to each class member's individual needs. Homeward Bound acknowledges this requirement is consistent with the terms of the Decree because it recognizes the placement and services provided to each class member must be consistent with her specific needs. Homeward Bound's claim of error centers around the API's enforcement provision. To succeed in an enforcement

proceeding, the API requires Homeward Bound to demonstrate Defendants failed to provide a system of community based services and supports and, as a result, the class as a whole was injured. Homeward Bound asserts the API's "class as a whole" requirement improperly altered the Decree and rendered the required system of individualized services and supports judicially unenforceable. In essence, Homeward Bound contends an individual class member should be permitted to bring suit in district court under the API to challenge her placement and services.

To assess Homeward Bound's claim, we must determine whether the API is a proper interpretation of the Decree. This court construes the terms of a consent decree *de novo*, applying "traditional principles of contract interpretation."[2] *Joseph A. ex rel. Corrine Wolfe v. Ingram*, 275 F.3d 1253, 1266 (10th Cir. 2002). We strive to give effect to the mutual intent of the parties as expressed in the language of the decree itself. *Stichting Mayflower Recreational Fonds v. Newpark Res., Inc.*, 917 F.2d 1239, 1246 (10th Cir. 1990).

---

[2]Defendants contend we should accord special deference to the district court's interpretation of the Decree. Appellate courts sometimes give district courts broad discretion in interpreting consent decrees in situations involving "a fact-dependent legal standard" or supervision and enforcement of long-term, remedial, public-law litigation. *Sinclair Oil Corp. v. Scherer*, 7 F.3d 191, 193 (10th Cir. 1993). This deferential standard of review is not warranted, however, when, as here, the district court is merely interpreting the scope of the parties' settlement agreement. *Id.* at 194.

-10-

Permanent obligations are imposed on Defendants pursuant to the second paragraph of the Decree's termination provisions. The relevant language states:

> The provisions of this Decree pertaining to the maintenance of a system of community services and supports shall remain in effect as long as the Department maintains a program of assistance for the mentally retarded.

Appellants' App. at 323. This provision speaks in systemic terms, requiring Defendants to maintain the system of community services and supports for class members established during the district court's active supervision of the Decree. Although that system must provide placement and services based on each class member's individual needs, it is the *system* that Defendants must maintain, not the placement and services provided to any particular class member. Accordingly, only systemic violations of the Decree are enforceable now that the district court's active supervision of the case has ended.

The resolution of individual grievances in federal court, the interpretation Homeward Bound advocates, would frustrate the objective of the Decree. The stated purpose of the Decree is "to establish an agreed-upon framework for a community service system as an alternative to institutional care for class members." Appellants' App. at 295. As part of this framework, Defendants were required to establish state administrative review and appeal procedures to ensure class members, and their parents or guardians, could enforce their right to individualized services. During the period of active district court supervision, the

Decree required utilization of state administrative appeal procedures to resolve disputes regarding placement and services provided to a single class member. Class members could only seek review of individual grievances in the district court if the state administrative appeal procedures, and subsequent review by a hearing officer appointed by the district court, failed to resolve the dispute. Given this history, permitting class members to bring individual grievances directly in district court now that active district court supervision has ended would be counter-intuitive. Moreover, it would circumvent the very administrative review and appeal mechanisms established as a direct result of this litigation. Such a result was not intended by the parties.[3]

In support of its claim that the Decree contemplates district court resolution of individual grievances, Homeward Bound relies on *Halderman ex. rel. Halderman v. Pennhurst State School & Hospital*, 901 F.2d 311 (3d Cir. 1990). The facts and procedural history of *Pennhurst* are similar to the present case. Mentally disabled residents of Pennhurst State School and Hospital brought a class action suit against various state and county governments challenging the care and treatment they received at the facility. *Id*. at 315. The parties entered

---

[3]Elimination of state administrative review and appeal procedures would arguably constitute a systemic violation of the Decree entitling Homeward Bound to bring suit under the API. The district court acknowledged as much in the API by requiring Defendants to "continue to make available to class members both administrative and legal review of agency decisions that affect them." Appellants' App. at 174.

into a Final Settlement Agreement ("FSA"), which was subsequently approved by the district court. *Id.* The main text of the FSA set out the general obligations of the parties. *Id.* Appendix A imposed specific obligations on the state and county governments, requiring them to prepare a written habilitation plan for each class member, provide community living arrangements and services, and complete an annual review of each class member's individual habilitation program. *Id.* The FSA specified the date on which the district court's active jurisdiction would terminate. *Id.* at 318. Under the terms of the FSA, however, the obligations set out in Appendix A were to remain in effect permanently. *Id.*

The plaintiffs brought an enforcement action, claiming the defendants were not in compliance with the FSA. *Id.* at 314. Although the period of active district court supervision had expired, the district court found the defendants in substantial noncompliance. *Id.* at 314, 318. On appeal, one county government argued it was in substantial compliance because only six out of two-hundred class members were not being provided with habilitative services. *Id.* at 324. The Third Circuit rejected the county government's argument. The court examined the language of the FSA and the intent of the parties in entering into the agreement and determined, "[w]hile the original suit . . . was a class action, the obligations of the [county government] under the FSA clearly run to class members as individuals, not as a group." *Id.* The court thus concluded compliance was measured with respect to the services each individual class

-13-

member received, not with respect to the services received by the class as a whole. *Id*. Homeward Bound urges a similar ruling here.

As an initial matter, we acknowledge the similarity between the Decree in this case and the FSA in *Pennhurst*. Both documents are aimed at transitioning mentally disabled individuals from an institutional setting to community placements. More importantly, both require individualized assessment of each class member's needs and provision of services based on those specific needs. The documents nonetheless differ in their description of the obligations that are to remain in effect permanently. The FSA in *Pennhurst* made the requirements in Appendix A permanent. *Id*. at 319. The duties imposed in Appendix A are phrased in individualized terms, requiring, for example, preparation of a written habilitation plan *for each class member* and provision of community living arrangements and services *for each class member*. *Id*. at 315. Accordingly, the Third Circuit determined the obligations in Appendix A run to class members as individuals, not in the aggregate. *Id*. at 324. The Decree at issue here, on the other hand, speaks in systemic terms. It requires the system of community services and supports for class members to remain in place permanently. As long as Defendants maintain a system that assesses and provides services in conformance with class members' individual needs, they remain in compliance with the Decree. Because the relevant language of the Decree here and the FSA in *Pennhurst* differ, *Pennhurst* is distinguishable. We therefore reject Homeward

Bound's contention that the Decree requires ongoing resolution of individual grievances in the district court.[4]

Nevertheless, the API did effectively modify the Decree by requiring any systemic violation to injure the class as a whole before an enforcement action could be brought. As discussed above, the district court properly determined the permanent obligations imposed on Defendants by the Decree are systemic in nature. The API's requirement that a violation be systemic to be actionable is therefore consistent with the Decree. A systemic violation, however, will not necessarily affect the class as a whole. For example, the Decree requires Defendants to consider a range of residential placement options for each class member, including independent living, natural homes, adult companion programs, shared living arrangements, foster homes, supported living arrangements, small group homes, and small intermediate care facilities. Defendants' elimination of one or more of these options would arguably be a systemic change. Nonetheless,

---

[4]Homeward Bound also argues the API violates Rule 23(b) of the Federal Rules of Civil Procedure because it does not adequately protect the interests of individual class members. Rule 23(b) is a procedural rule setting forth the prerequisites for class certification; it does not "abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613–14 (1997). We have observed the Rule's "procedures represent a careful balancing of the need for efficiency with the need to ensure adequate protection for the individual members of the class." *Gottlieb v. Wiles*, 11 F.3d 1004, 1007 (10th Cir. 1993). Once a class has been certified, however, the required balancing has been achieved. The Rule does not require the district court to engage in this balancing when it issues all subsequent orders. Homeward Bound's argument to the contrary fails.

such a change would not necessarily affect the entire class. Class members who desired, or whose individual needs required, one of the remaining residential options would be unharmed. Because Homeward Bound could not demonstrate injury to the entire class, it would not be able to successfully challenge the elimination of residential placement options, arguably a systemic change, under the API.

Our determination that a systemic violation need not affect the class as a whole is further supported by the dispute resolution scheme in effect during the period of active district court supervision of the Decree. The Decree created two separate review mechanisms—one for systemic violations and one for individual grievances. The Decree characterized system issues as those "affecting more than one individual," not the class as a whole. As this scheme demonstrates, the Decree envisioned the existence of systemic violations that affected less than all of the class. Because the API's demand for injury to the class as a whole was not contemplated by the Decree, the API effectively modified the Decree and narrowed its scope by including this requirement.

The district court did not indicate the API was intended to alter the terms of the Decree. Nonetheless, because the API had the effect of modifying the Decree, we must determine whether the modification was proper. A district court's modification of a consent decree is reviewed for an abuse of discretion. *Joseph A.*, 275 F.3d at 1267. A district court abuses its discretion when it bases its ruling

-16-

on an erroneous conclusion of law or fails to consider the applicable legal standard upon which the exercise of its discretionary judgment is based. *Kiowa Indian Tribe v. Hoover*, 150 F.3d 1163, 1165 (10th Cir. 1998); *Ohlander v. Larson*, 114 F.3d 1531, 1537 (10th Cir. 1997).

Modification of a consent decree requires a showing of a significant change in factual or legal circumstances warranting the revision. *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 384 (1992). After the last class member was transferred to a community placement, Defendants filed a Rule 60(b) motion requesting termination of the Decree. They argued termination was warranted because the Decree's objective, to move all class members into community placements and provide state-sponsored supports and services, had been accomplished. The district court denied Defendants' motion in January 2002. It observed modification of a consent decree is not appropriate when the alleged change in circumstances warranting the modification was anticipated by the parties when the decree was entered. *See id*. at 385. The court determined the change in circumstances alleged by Defendants—their substantial compliance with the Decree—was envisioned by the parties. Thus, the district court refused to modify or terminate the Decree. Several years later, however, the district court entered the API, effectively modifying the Decree. At that time, the court did not vacate its prior order denying modification or termination of the Decree. Nor did it specify any change in circumstances warranting the modification. Thus, the

-17-

district court failed to consider the applicable legal standard upon which the exercise of its discretion to modify consent decrees is based. Because the district court failed to articulate any significant change in factual or legal circumstances, we conclude it abused its discretion in modifying the Decree.

**IV. Conclusion**

For the foregoing reasons, we **REVERSE** and **REMAND** with instructions for the district court to consider whether circumstances have changed since January 2002 when it denied modification of the Decree to warrant the class as a whole requirement. If the district court finds there has been no change in circumstances, it should vacate the portion of the API requiring injury to the class as a whole to succeed in any enforcement action.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge