141 Nev., Advance Opinion 58

# IN THE SUPREME COURT OF THE STATE OF NEVADA

CLARK COUNTY SCHOOL DISTRICT,
Petitioner,
vs.
THE EIGHTH JUDICIAL DISTRICT
COURT OF THE STATE OF NEVADA,
IN AND FOR THE COUNTY OF
CLARK; AND THE HONORABLE
RHONDA KAY FORSBERG, DISTRICT
JUDGE,
Respondents,
    and
ANGALIA B., AS EDUCATIONAL
DECISION MAKER FOR J.B.; AND J.B.,
SUBJECT MINOR,
Real Parties in Interest.

No. 89127



FILED

NOV 26 2025

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Original petition for a writ of mandamus or prohibition challenging a district court order directing the production of education records.

*Petition granted.*

Greenberg Traurig, LLP, and Kara B. Hendricks, Mark Ferrario, Akke Levin, and Elliot Anderson, Las Vegas; Clark County School District, Office of the General Counsel, and Patrick J. Murch, Las Vegas, for Petitioner Clark County School District.

Legal Aid Center of Southern Nevada, Inc., and Marina Dalia-Hunt and Kimberly Abbott, Las Vegas, for Real Party in Interest J.B.

McCoy Law Group and Brandon W. McCoy, Las Vegas, for Real Party in Interest Angalia B.

Washoe County School District, Office of the General Counsel, and Sara K. Montalvo and Andrea L. Schulewitch, Reno,
for Amicus Curiae Washoe County School District.

---

BEFORE THE SUPREME COURT, EN BANC.

*OPINION*

By the Court, STIGLICH, J.:

The federal Family Educational Rights and Privacy Act (FERPA) and parallel Nevada statutes protect a parent's or legal guardian's access to a student's education records. Under this law, real party in interest Angalia B. sought the education records of J.B., a student in a Clark County School District (CCSD) school. Believing that the materials CCSD initially provided in response were incomplete, Angalia subsequently requested all emails mentioning J.B. that CCSD stored on a Google cloud server. CCSD refused the request, and the issue was placed before the district court, which granted Angalia relief and ordered CCSD to turn over all emails that referred to J.B. Now seeking writ relief from this court, CCSD asserts that the district court improperly granted Angalia's motion, as the requested emails are not education records to which FERPA and the parallel Nevada statutes provide her access.

We conclude that not every email that mentions a student and is stored on a school's email server constitutes an education record under FERPA and its analogous Nevada statutes. Instead, an individual email *may* become part of a student's education records when the school district or its agent takes affirmative and intentional steps to treat the email as an institutional record and stores it with a designated individual in a

designated place. In this, we are persuaded by the fact that emails, by their nature, may contain informal communications that are easily deleted and thus do not necessarily comprise a student's education records simply by virtue of mentioning that student. The district court here erred in ruling to the contrary. We therefore grant CCSD's petition for a writ of mandamus and direct the district court to vacate its order compelling CCSD to produce all emails stored on its server that mention J.B.

## FACTS AND PROCEDURAL HISTORY

J.B. currently attends a school for special-needs children within CCSD. The district court has appointed Angalia B., J.B.'s grandmother and adoptive mother, to be J.B.'s Educational Decision Maker (EDM). The court order appointing Angalia as EDM required J.B.'s school to permit her access to school records. Angalia accordingly sought J.B.'s education records from CCSD.

CCSD provided certain materials, but Angalia was concerned that the records were incomplete. Based on this belief, Angalia requested any emails CCSD stored in Google Workspace that identified J.B. by first or last name or initials.[1] A school official initially denied that request by responding that the school did not store education records with Google. CCSD subsequently argued that emails stored with Google are not education records that an EDM may access unless they had been printed and placed in a student's file.

---

[1]The initial request named Google Vault. CCSD in a brief explained that emails are stored in Google Workspace, while Google Vault is a tool used to search emails in CCSD's .net domain. The distinction is not material to our analysis, and we treat the request as seeking emails CCSD stores, generally, using a cloud server hosted by a single provider.

Meanwhile, Angalia filed a due process complaint against CCSD pursuant to the Individuals with Disabilities Education Act, alleging that the school district violated special education law. The complaint alleged that CCSD improperly attempted to transfer J.B. to a different school that was not beneficial and that J.B.'s individualized education plan was inadequate. Because she also wanted the emails for use in the separate due process case, Angalia moved to join CCSD to J.B.'s dependency case and for expedited production of the emails.[2] After a hearing, the district court found that any emails containing a reference to J.B. necessarily relate to J.B. and, when maintained by being stored in a secured database, constituted education records that Angalia was entitled to access. The court thus granted the motion and ordered CCSD to produce all emails referring to J.B. stored on its Google Workspace domain.

CCSD petitions for a writ of mandamus or prohibition, challenging the district court's decision. A panel of this court entered an opinion granting the writ petition and directing the district court to conduct an in camera review to determine what records directly related to J.B. CCSD petitioned for en banc reconsideration, arguing that the panel decision misconstrued controlling authority.[3] We granted en banc reconsideration and withdrew our previous opinion. We now issue this opinion in its place.

---

[2]The parties subsequently settled the due process dispute.

[3]Washoe County School District filed an amicus brief in support of CCSD's petition for en banc reconsideration.

## DISCUSSION

CCSD argues that the district court misconstrued "education record" as used in NRS 392.029(10) and that its interpretation conflicts with constructions of that term in federal law. CCSD thus seeks a writ of mandamus directing the court to vacate its May 30, 2024, order requiring it to produce emails referring to J.B. stored on a Google Workspace platform. Angalia counters that the district court properly construed FERPA in compelling production of the emails. For the reasons set forth below, we agree with CCSD.

We may issue a writ of mandamus "to compel the performance of an act that the law requires" or to control a district court's "arbitrary or capricious exercise of discretion." NRS 34.160; *Int'l Game Tech., Inc. v. Second Jud. Dist. Ct.*, 124 Nev. 193, 197, 179 P.3d 556, 558 (2008). This extraordinary relief is generally available only when the petitioner lacks a plain, speedy, and adequate remedy in the ordinary course of law. NRS 34.170. An appeal from a final judgment is generally an adequate and speedy legal remedy precluding writ relief. NRS 34.170; *Int'l Game Tech.*, 124 Nev. at 197, 179 P.3d at 558-59. Whether to grant a writ petition is within our sole discretion. *Smith v. Eighth Jud. Dist. Ct.*, 107 Nev. 674, 677, 818 P.2d 849, 851 (1991).

At the outset, we determine that entertaining CCSD's mandamus petition is appropriate.[4] The order challenged here arose from

---

[4]CCSD titles its petition as seeking mandamus or prohibition relief but provides no argument or authority showing that a writ of prohibition is warranted. *See* NRS 34.320 (providing that a writ of prohibition may issue to bar an entity from acting in excess of its jurisdiction); *Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38

a dependency case to which CCSD was joined to compel it to comply with Angalia's records request. The order is not a final judgment from which CCSD may appeal, no other statute permits an appeal from this order, and CCSD thus lacks an adequate legal remedy.

"Statutory interpretation is a question of law that we review de novo, even in the context of a writ petition." *Int'l Game Tech.*, 124 Nev. at 197, 179 P.3d at 559. Under FERPA, schools receiving federal funds must allow parents and legal guardians to inspect the education records of their children.[5] 20 U.S.C. § 1232g(a)(1)(A); *see also* 34 C.F.R. § 99 (containing regulations implementing FERPA). Nevada has enacted parallel legislation, requiring that "a public school shall comply with the provisions of 20 U.S.C. § 1232g(a) and 34 C.F.R. Part 99" when "a parent or legal guardian of a pupil requests the education records of the pupil." NRS 392.029(1); *see also* 34 C.F.R. § 99.10 ("[A] parent or eligible student must be given the opportunity to inspect and review the student's education records."). Nevada utilizes the federal definition of "education records" stated in 20 U.S.C. § 1232g(a)(4)(A). NRS 392.029(10). With exceptions not relevant here, education records include "records, files, documents, and other materials" that "(i) contain information directly related to a student; and (ii) are maintained by an educational agency or institution or by a person acting for such agency or institution." 20 U.S.C. § 1232g(a)(4)(A).

---

(2006) (declining to consider claims not supported by cogent argument and relevant authority).

[5]Where there is no suitable parent or guardian willing or able to make education decisions on behalf of a child, a court may appoint an EDM to act in the child's best interests. NRS 432B.462.

Parents and guardians may challenge and seek to correct inaccurate or misleading information within a student's education records. *Id.* § 1232g(a)(2); NRS 392.029(2). They may correspondingly add a written explanation regarding the contents of the education records. 20 U.S.C. § 1232g(a)(2). An educational agency in turn must document any person or entity—other than school officials with a legitimate educational interest— that requests or obtains access to the education records and must supplement the records with that documentation. *Id.* § 1232g(b)(1)(A), (b)(4)(A); *see also* 34 C.F.R. § 99.32(a) (setting forth what the access log must contain). This access list is "available only to parents, to the school official and [that person's] assistants who are responsible for the custody of such records," as well as to those involved in "auditing the operation of the system." 20 U.S.C. § 1232g(b)(4)(A).

The United States Supreme Court in *Owasso Independent School District No. I–011 v. Falvo*, 534 U.S. 426 (2002), interpreted when materials are "maintained" in such a manner to constitute "education records." "Maintained," in this sense, connotes permanence and deliberate storage, such as storage "in a filing cabinet in a records room at the school or on a permanent secure database, perhaps even after the student is no longer enrolled." *Id.* at 433. Records are maintained in this way when they are stored "in the same way the registrar maintains a student's folder in a permanent file." *Id.* And in requiring schools to track access and "describing a 'school official' and 'his assistants' as the personnel responsible for the custody of the records," the Court reasoned that the statute envisions "that education records are institutional records kept by a single central custodian, such as a registrar." *Id.* at 434-35.

Thus, to be an education record, a document or other material must be an institutional record stored in a designated place that is, typically, overseen by a designated individual responsible for maintaining such records. These records are stored with controlled access because these records may contain personal and sensitive information and affect the course of a student's education. FERPA accordingly provides a specific mechanism for parents and guardians to challenge the education records' contents and to provide an explanation of the contents if necessary. Education records therefore generally exclude materials informally created in the ordinary course of business that a school possesses but which do not rise to the level of institutional records.

That said, an email *may* constitute an education record. We understand that important information is relayed by email regularly, and one may easily imagine a school official retaining such emails in a deliberate fashion so that such information is preserved. To be an education record, however, the email relating to the student must be deliberately stored by the records custodian as part of that student's records. We emphasize that deliberate action to store such emails as institutional records is critical. The school district thus ultimately decides what materials constitute institutional records that are part of a student's record and then ensures that those materials are protected and preserved.

Such intentionality is not present when looking to the entire contents of the .ccsd domain that CCSD stores with Google Workspace. Many discussions exchanged by email are informal conversations, distinguishable from the type of information formally designated as education records and stored in a single place with a log of who has accessed the records. *See Thompson v. U.S. Dep't of Hous. & Urb. Dev.*, 219 F.R.D.

Supreme Court
of
Nevada

(O) 1947A

8

93, 97 (D. Md. 2003) ("Many informal messages that were previously relayed by telephone or at the water cooler are now sent via email." (internal quotation marks omitted)). The senders of such informal communications lack the intentionality to create the type of record that FERPA requires to be maintained for each student. We agree with the Commonwealth Court of Pennsylvania that "emails stored in an ordinary manner are not, without more, maintained by the institution." *W. Chester Univ. of Pa. v. Rodriguez*, 216 A.3d 503, 509 (Pa. Commw. Ct. 2019). After all, "emails stored in the ordinary manner may be 'deleted within moments' of their transmission." *Id.* "The mere fact that information may be held by an educational agency is insufficient to make it an educational record." *Jacobson v. Ithaca City Sch. Dist.*, 39 N.Y.S.3d 904, 907 (Sup. Ct. 2016) (addressing video recordings). In reaching this determination, we align with other courts that have considered the issue.[6] *See W. Chester Univ.*, 216 A.3d at 509-10 (collecting cases).

The requirement that education records "directly relate[ ] to a student" further weighs against construing all emails mentioning J.B. on the .ccsd server as J.B.'s education records. 20 U.S.C. § 1232g(a)(4)(A).

---

[6]Another concern with regard to adopting a broad definition of "education records" is how that would impact conversations made relating to students in other digital tools and applications. We find it troubling that under such a broad definition, a school district might be required to provide access to workplace chat applications, such as Slack or Microsoft Teams. Still more challenging to examine and apply would be inputs and outputs from services that a district may license using large language models or artificial intelligence. While such information may be stored on a centralized server either by or on behalf of a school district, it would lack the hallmark of being intentionally maintained as to a specific student—absent, of course, intentional designation as an education record by the school district.

Congress limited education records to those that *directly* relate to a student. This excludes records that may *incidentally* relate because they mention the student's name while primarily addressing something else. To directly relate to a student, information must have "a close connection to that student." *Rhea v. Dist. Bd. of Trs. of Santa Fe Coll.*, 109 So. 3d 851, 857 (Fla. Dist. Ct. App. 2013). This, however, "does not encompass every document that relates to a student in any way and is kept by the school in any fashion." *BRV, Inc. v. Super. Ct.*, 49 Cal. Rptr. 3d 519, 526 (Ct. App. 2006). Allowing an EDM to access every email that merely mentions a particular student would invariably include many emails that only incidentally name and do not directly relate to a student. The standard Angalia proposes is thus too broad to capture only the materials that fall within the scope of 20 U.S.C. § 1232g(a)(4)(A).

We conclude that CCSD's internal regulation illuminates well that an email sent in the ordinary course of business is not an education record. CCSD provides that education records include the "student academic permanent record, achievement and scholastic aptitude test results, attendance and discipline file, class record books, grade books, health inventory, and student support services folder." CCSD reg. R-5125.1; *see also BRV, Inc.*, 49 Cal. Rptr. 3d at 526 ("Typical of such records would be registration forms, class schedules, grade transcripts, discipline reports, and the like."). We do not take this as a dispositive or exhaustive list of what information may constitute a student's education record but rather as highlighting how different these types of records are from, for instance, an individual email with a student discussing a particular assignment.

The requirement that an educational agency track who seeks to access education records further weighs against construing ordinary emails as student records. The prevalence and informality of email, as well as that replies may restate all previous messages in a particular conversation, can lead to an enormous quantity of records. *See Thompson*, 219 F.R.D. at 97 ("[C]omputers have the ability to capture several copies (or drafts) of the same e-mail, thus multiplying the volume of documents." (internal quotation marks and citation omitted)). Indeed, CCSD explained that its preliminary search of J.B.'s initials or either initial along with J.B.'s first or last name yielded millions of results. Maintaining tracking and privilege logs would thus impose a substantial administrative burden. Moreover, the provisions empowering parents and guardians to challenge, seek to correct, and add written explanations to information in education records are difficult to square with treating ordinary emails as education records. Emails are not typically amenable to being corrected and are often so numerous that it is difficult to imagine that the legislature intended to enact a system whereby parents and guardians might append explanations to every email mentioning their child's name. Limiting the scope of education records to matters intentionally designated as such considerably narrows the universe of materials subject to the statutes' access, amendment, and explanation protections and yields a more practicable statutory scheme without impeding the aims of the statutes. Further still, if any email mentioning a student is an education record, then all emails *sent to* the district mentioning a student would be subject to these statutory protections. This consequence would likewise result in an unworkable burden and would deprive the school district of the ability to control what

SUPREME COURT
OF
NEVADA

11

(O) 1947A

is designated as an education record—two outcomes we conclude are at odds with the legislature's intentions.

While Angalia argues that the practical implications of the construction of "education records" should be disregarded, we disagree and determine that the consequences of its interpretation are salient, given its ambiguity. *See Robert E. v. Just. Ct.*, 99 Nev. 443, 445, 664 P.2d 957, 959 (1983) (providing that an ambiguous statute "can be construed in line with what reason and public policy would indicate the legislature intended" (internal quotation marks omitted)). The Court in *Owasso* expressed concern that an overbroad interpretation of what constitutes an education record would substantially burden educators in an impracticable manner that it did not believe Congress intended. 534 U.S. at 435. We similarly conclude that interpreting "education records" to sweep so broadly as to encompass all emails that mention a student would be contrary to Congress's intent in enacting FERPA and the Nevada Legislature's intent in enacting Nevada's parallel legislation.[7]

## CONCLUSION

FERPA provides certain protections for education records. Ordinary emails exchanged in the routine course of daily activities are not "maintained by" the school district within the meaning of the statute, even if stored on a database that the district manages. Further, an email that merely mentions a student does not necessarily directly relate to and bear

---

[7]We need not reach Angalia's public-records-act argument that is raised for the first time in responding to Washoe County School District's amicus brief in support of en banc reconsideration. *See Weaver v. State, Dep't of Motor Vehicles*, 121 Nev. 494, 502, 117 P.3d 193, 198-99 (2005) (declining to consider an argument raised for the first time in appellant's reply brief).

a close connection to the student. The district court erred in concluding that all emails that referred to J.B. and were stored on CCSD's domain constituted J.B.'s education records and in ordering their production. We therefore grant CCSD's petition and direct the clerk of this court to issue a writ of mandamus that directs the district court to vacate its May 30, 2024, order compelling CCSD to produce all emails that reference J.B.

_____, J.
Stiglich

We concur:

_____, J.
Pickering

_____, J.
Parraguirre

_____, J.
Cadish

LEE, J., with whom HERNDON, C.J., and BELL, J., agree, dissenting:

I respectfully dissent because FERPA's intent is to make student records readily available to parents. Concluding that emails stored on CCSD's Google Workspace are not education records unless the school district takes affirmative and intentional steps to treat the email as an institutional record contravenes the intentions of FERPA.

FERPA grants parents the right to "inspect and review the education records of their children." 20 U.S.C. § 1232g(a)(1)(A). The spirit of FERPA supports a broad interpretation of educational records. In defining "education records," Congress explained "parents and students should have access to *everything* in institutional records maintained for each student in the normal course of business and used by the institution in making decisions that affect the life of the student." *Belanger v. Nashua, N.H. Sch. Dist.*, 856 F. Supp. 40, 49 (D.N.H. 1994) (quoting 120 Cong. Rec. at 39858-59) (emphasis modified)). Emails exchanged concerning a student could evade disclosure if a school district or its agents inadvertently or deliberately fail to store them in a separate "record." Congress intended parents and students to have access to *everything* in institutional records, not for educational institutions to shield disclosure of emails directly related to a student simply because the email was not intentionally segregated. *Belanger*, 856 F. Supp. at 49.

*Owasso* remains the only decision binding on this court. Notably, *Owasso* was decided before databases such as Google Vault existed. *See generally Owasso Indep. Sch. Dist. No. I-011 v. Falvo*, 534 U.S. 426 (2002). The advancing nature of cloud-based storage means that emails can be intentionally tethered to a specific student without the need to place them (either through printing, clicking and dragging, or some other overt act) into a designated folder. Thus, in modern-day systems, "intentionality" is built into

the system itself. CCSD specifically chose Google Workspace (a secure, electronic database) to store and manage its emails, understanding that this system provides a secure way to automatically store emails indefinitely. The Google Vault system allows CCSD to search through the emails stored on Google Workspace, thus negating the need to intentionally set aside records into student-specific folders, as was required in a precloud storage system era. *See* Google Vault Help, https://support.google.com/vault/answer/2462365?hl=en (last visited Nov. 19, 2025).

Further, *Owasso* does not mandate a nondisclosure here. Even under the narrowest possible reading of *Owasso*, CCSD is maintaining the emails through a digital information retention system. *See id.* at 433. *Owasso*'s only instruction on the term is that "[t]he word 'maintain' suggests FERPA records will be kept in a filing cabinet in a records room at the school or on a *permanent secure database*, perhaps even after the student is no longer enrolled." *Id.* (emphasis added).

Certainly, not every email incidentally related to a student constitutes an education record under FERPA and its analogous Nevada statutes. *BRV, Inc. v. Super. Ct.*, 49 Cal. Rptr. 3d 519, 526 (Ct. App. 2006) (recognizing that an education record "does not encompass every document that relates to a student in any way"). Records that include information about a student but are primarily about someone or something else are not considered directly related. *BRV*, 49 Cal. Rptr. 3d 519 at 526-27 (holding that a report investigating a school administrator was not directly related to particular students despite including those students' names and activities). An analysis more in keeping with the intent of FERPA would instead focus on content related to a student's discipline, safety, or other school-related conditions. *Cent. Dauphin Sch. Dist. v. Hawkins*, 253 A.3d 820, 830-31 (Pa. Commw. Ct. 2021) (finding a record is "directly related" to

a student when it is used for disciplinary purposes, to show a student's actions or victimization, or to display personally identifiable information). The natural consequence of the court's opinion today will be the exclusion of emails exhibiting these characteristics, unless those emails are intentionally flagged or segregated into a student's "file" and separately maintained.

While some courts suggest that to maintain a record, the institution must intend for that record to be maintained in the student's file, this result is not mandated under FERPA or *Owasso*, and to construe either in this manner invites abuse and is anathema to the core purpose of the statute. Simply stated, a record is maintained when it is stored on an educational institution's secure database or storage system. Construing FERPA consistent with its legislative intent requires a broad reading of the word "maintained," which construction further serves to accommodate any future unknowable storage format that would otherwise undermine the transparency inherent in the law. For these reasons, I respectfully dissent.

_____, J.
Lee

We concur:

_____, C.J.
Herndon

_____, J.
Bell

