# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 11-2066

CHICAGO TRIBUNE COMPANY,

*Plaintiff-Appellee*,

*v.*

BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 10 C 568—**Joan B. Gottschall**, *Judge*.

ARGUED SEPTEMBER 30, 2011—DECIDED MAY 24, 2012

Before EASTERBROOK, *Chief Judge*, and POSNER and WILLIAMS, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. Beginning in 2009, the Chicago Tribune published a series of articles collectively known as "Clout Goes to College." The Tribune revealed that the University of Illinois had a special process for reviewing the applications of persons with well-placed supporters. Many applicants considered through this process were admitted even though they

would not have been under the University's normal criteria. The President of the University system, the Chancellor of one campus, and seven of the nine members of the University's Board of Trustees eventually resigned. Wikipedia collects some of this information in an entry entitled "University of Illinois clout scandal".

The Tribune sought additional information through the Illinois Freedom of Information Act, 5 ILCS 140/1 to 140/11.5. The University is covered by this statute and therefore must make requested documents available, unless an exemption applies. 5 ILCS 140/1.2, 140/3. The Tribune requested, for every applicant in "Category I" (one of the categories of clout-heavy applicants), the names and addresses of the applicants' parents and the identity of everyone "involved in such applicants' applications." In response, the University invoked Exemption 1(a), which provides that agencies will with-hold "[i]nformation specifically prohibited from dis-closure by federal or State law or rules and regulations implementing federal or State law." 5 ILCS 140/7(1)(a). It pointed to 20 U.S.C. §1232g(b)(1), part of the Family Education Rights and Privacy Act of 1974 (FERPA or "the 1974 Act"), as the federal statute that in the University's view specifically prohibits the disclosure. It provides:

> No funds shall be made available under any ap-plicable program to any educational agency or institution which has a policy or practice of permitting the release of education records (or personally identifiable information contained

therein other than directory information, as defined in paragraph (5) of subsection (a) of this section) of students without the written consent of their parents to any individual, agency, or organization . . . .

Section 1232g(b)(1) has some exceptions, but none covers what the Tribune wants. The University asserted that even though the Tribune sought the identities of applicants' parents rather than students, identifying parents necessarily would disclose "education records" or "personally identifiable information" about many students—which after all is the Tribune's goal. The newspaper's articles were about persons admitted despite not meeting the University's normal criteria rather than people whose applications were turned down.

The University added: "[W]e would anticipate that additional exemptions of the Illinois FOIA likely would apply if all of the responsive records were gathered and reviewed. For example, we would expect that responsive documents would contain information exempt from disclosure pursuant to several provisions of the Act, including the following: section 7(1)(b)(i) ('files and personal information maintained with respect to . . . students . . . receiving . . . educational . . . services . . . from . . . public bodies'); section 7(1)(b) (unwarranted invasion of personal privacy); and section 7(1)(f) (drafts/predecisional deliberative communications)." The Tribune asked for review within the University's administrative hierarchy. A letter from the University's President rejected the Tribune's appeal.

The Tribune's claim of access to these documents arises under Illinois law, so one would have expected the next step to be a suit in state court. The parties are not of diverse citizenship, and anyway it is not possible to sue an arm of state government in federal court to vindicate a claim under state law. See *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984). Yet instead of seeking the documents through state litigation, the Tribune asked a federal district court for a declaratory judgment that the University misunderstands FERPA. The district court granted the Tribune's motion for summary judgment, 781 F. Supp. 2d 672 (N.D. Ill. 2011), after concluding that the phrase "prohibited from disclosure by federal or State law" in 5 ILCS 140/7(1)(a) means only statutes that directly forbid disclosure. The 1974 Act, by contrast, tells the Secretary of Education when it is lawful to grant federal money to a unit of state government. The district judge understood §1232g(b)(1) to take state law or policy as a given and provide or withhold federal funds accordingly. The University, by contrast, proposes to take the federal grant as a given and treat the conditions as if they were statutory, rather than as terms of state-federal cooperation. As the district court saw things, Illinois may commit a breach of contract if it releases the information the Tribune requested, but no federal law "prohibits" disclosure within the meaning of 5 ILCS 140/7(1)(a).

The briefs of both sides in this court contend that 28 U.S.C. §1331, the federal-question jurisdiction, supplies subject-matter jurisdiction for this suit. The district judge must have assumed likewise. But the United

States, whose brief as *amicus curiae* supports the University's understanding of the 1974 Act, also observes that there is serious doubt about subject-matter jurisdiction, because the Tribune's claim to the documents arises under state rather than federal law. The University may have a federal defense to the Tribune's claim, but it is blackletter law that a federal defense differs from a claim arising under federal law. See, e.g., *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804 (1986). And although the University, as the natural defendant in state court, might have been able to seek a federal declaratory judgment under the mirror-image doctrine applicable to declaratory litigation, see *NewPage Wisconsin System Inc. v. United Steel Workers*, 651 F.3d 775 (7th Cir. 2011) (collecting authority), the Tribune rather than the University commenced this suit. The Tribune is the natural plaintiff and cannot use 28 U.S.C. §2201, the declaratory-judgment statute, to have a federal court blot out a potential federal defense to its own potential state-law suit. See, e.g., *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 16 (1983); *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667 (1950).

We asked the parties to file supplemental briefs addressing subject-matter jurisdiction. Both sides contend that jurisdiction is proper under the approach of *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005). Yet *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677 (2006), shows that *Grable* does not alter the rule that a potential federal defense is not enough to create federal jurisdiction under

§1331. See also *Bennett v. Southwest Airlines Co.*, 484 F.3d 907, rehearing denied, 493 F.3d 762 (7th Cir. 2007). Some of the language in *Grable* could be read to say that all important federal issues should be resolved in a federal forum, but *Empire Healthchoice* concluded that *Grable* should not be so understood.

Indeed, *Grable* has nothing to do with using federal defenses to move litigation to federal court. In *Grable* the federal issue was part of the plaintiff's own claim. The Internal Revenue Service had seized real property to satisfy a tax lien and sold the property to Darue. Grable, the taxpayer, filed a quiet-title action in state court, asserting that Darue's title was invalid because the IRS had given notice of the seizure in the wrong way (by certified mail rather than a process server). The Supreme Court had to decide whether a claim "arises under" federal law for the purpose of §1331 when one element of a claim depends on state law and another on federal law. It concluded that the claim is federal when "a state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." 545 U.S. at 314. This formulation can lead to problems in application, see *Samuel C. Johnson 1988 Trust v. Bayfield County*, 649 F.3d 799 (7th Cir. 2011), though often matters will be straight-forward. In *Empire Healthchoice*, for example, the Court observed that *Grable* depended on the fact that the dispute "centered on the action of a federal agency (IRS) and its compatibility with a federal statute, the

question qualified as 'substantial,' and its resolution was both dispositive of the case and would be controlling in numerous other cases." 547 U.S. at 700. Take away those ingredients—none was satisfied in *Empire Healthchoice*—and there is no federal jurisdiction.

Here, unlike *Grable*, the claim for the documents arises under state law, and *only* state law; the Tribune's request for the information does not depend on even a smidgeon of federal law. No federal agency's decision has been contested. The University has a potential defense under §7(1)(a), but even that may depend on state rather than federal law. (We expand on this observation below.) The §7(1)(a) exemption is not necessarily dispositive. Recall that the University's letter rejecting the Tribune's request mentioned §7(1)(b)(i), which entitles student records to protection. It is not clear to us that the 1974 Act and the implementing regulations forbid disclosure of any document that is outside the scope of the §7(1)(b)(i) exemption. A state court therefore might rule in the University's favor wholly as a matter of state law—which suggests that the federal issue not only is not "necessarily" presented, but may never be presented at all, rendering a federal court's decision nothing but an advisory opinion. The University has other potential state-law defenses as well.

Let us return to the question whether the University's reliance on §7(1)(a) creates a question of federal law. The Tribune assumes that availability of Exemption 1(a) depends entirely on §1232g(b)(1). The meaning of §1232g is a question of federal law, to be sure. But before a

court reaches any federal issue, it must resolve the meaning of §7(1)(a) itself, and that's a question of Illinois law. It provides, recall, that "[i]nformation specifically prohibited from disclosure by federal or State law" is exempt from the Illinois Freedom of Information Act. What does it mean to say that information is "specifically prohibited from disclosure by federal . . . law"? The 1974 Act does not by itself forbid any state to disclose anything. It says that the Secretary of Education must not make grants to state bodies whose policy allows the disclosure of student records. Any state can turn down the money and disclose whatever it wants. The most one can say about federal law is that, *if* a state takes the money, *then* it must honor the conditions of the grant, including nondisclosure. See *Owasso Independent School District v. Falvo*, 534 U.S. 426, 428 (2002); *United States v. Miami University*, 294 F.3d 797 (6th Cir. 2002). Honoring a grant's conditions is a matter of contract rather than a command of federal law. It is of course possible that information is "specifically prohibited from disclosure by federal . . . law" when the state has entered into a contractual commitment with the federal government under which disclosure is forbidden as long as the contract lasts. But it is also possible that for the purpose of §7(1)(a) information is "specifically prohibited from disclosure by federal . . . law" only when federal law is unconditional—when there is nothing the state can do (such as turning down proffered funds) to honor the pro-disclosure norm in the Illinois FOIA.

This is not just a semantic quibble. Illinois cannot avoid the effects of its commitment to the federal gov-

ernment by giving a narrow reading to "specifically prohibited from disclosure by federal . . . law". Even if Illinois law purports to command the disclosure of particular information, the Supremacy Clause means that federal law prevails. The University thus can assert a defense directly under federal law independent of §7(1)(a). But that "pure" argument about the meaning of the 1974 Act belongs in federal court only in a suit by the United States. *Gonzaga University v. Doe*, 536 U.S. 273 (2002), holds that §1232g, on which the University relies, does not support a private right of action in federal court. See also *Astra USA, Inc. v. Santa Clara County*, 131 S. Ct. 1342 (2011) (third-party beneficiaries of federal funding contracts cannot sue in federal court to enforce the conditions). Section 1232g can be enforced defensively (as a matter of contract) in state court, or in a federal suit by the United States. That's how *Miami University* came to federal court; the United States filed its own suit to enforce the conditions the state university had accepted with the federal grants.

What happened in this case is hard to reconcile with *Gonzaga University*. The Tribune, a stranger to the contract between the University of Illinois and the Department of Education, filed a suit in which (on the Tribune's view) the only issue is the effect of §1232g(b)(1). Doe, the private party in *Gonzaga University*, was at least a student and thus a beneficiary of the 1974 Act's privacy protections. If a student cannot file suit in federal court to enforce §1232g(b)(1), why would a non-beneficiary of the statute (and non-party to the contract) be entitled to a judicial ruling on its scope?

To put this differently, it was important in *Grable* that the question at hand—how must the Commissioner of Internal Revenue notify a taxpayer whose property is about to be confiscated to satisfy a tax debt?—is one that federal courts are supposed to resolve, for the benefit of both federal taxpayers and the national government. By contrast, under *Gonzaga University*, the question the Tribune wants to raise—what privacy protections follow from states' decisions to accept funds under the 1974 Act?—is one the federal courts are supposed *not* to resolve, unless the United States sues in its own name to enforce the conditions of the grant.

*Grable* held that federal jurisdiction does not depend on the existence of a private right of action for damages, so we do not hold that *Gonzaga University* has a jurisdictional effect. What we do conclude is that *Grable* does not overrule the holdings of *Skelly Oil* and many later decisions that the natural plaintiff in a claim arising under state law cannot use a declaratory-judgment action to litigate an anticipated federal defense in federal court. The Tribune accordingly must proceed in a court of Illinois.

There is a substantial public interest in the information the Tribune seeks. There is also a substantial public interest, under both §1232g(b)(1) and 5 ILCS 140/7(b)(1), in protecting the legitimate privacy of students and their families. Because the Tribune's claim to the information arises under Illinois law, the state court is the right forum to determine the validity of whatever defenses the University presents to the

Tribune's request. We do not express any opinion on whether the information the Tribune seeks relates to student records within the meaning of the 1974 Act and the implementing regulations. The district court's judgment is vacated, and the case is remanded with instructions to dismiss for want of subject-matter jurisdiction.