**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 23-1796

CAPITOL BROADCASTING COMPANY, INCORPORATED; MCCLATCHY COMPANY, LLC, d/b/a The News and Observer Publishing Company; JAMES S. FARRIN, P.C., d/b/a Law Offices of James Scott Farrin

        Plaintiffs - Appellants

v.

CITY OF RALEIGH, NORTH CAROLINA; CITY OF SALISBURY, NORTH CAROLINA; CITY OF KANNAPOLIS, NORTH CAROLINA; NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY; NORTH CAROLINA STATE HIGHWAY PATROL DEPARTMENT

        Defendants - Appellees.

Appeal from the United States District Court for the Middle District of North Carolina at Greensboro.  Loretta C. Biggs, District Judge.  (1:22−cv−01068−LCB−LPA)

Argued:  May 9, 2024                          Decided:  June 17, 2024

Before WILKINSON and AGEE, Circuit Judges, and FLOYD, Senior Circuit Judge.

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Judge Agee and Senior Judge Floyd joined.

**ARGUED:** Matthew Nis Leerberg, FOX ROTHSCHILD LLP, Raleigh, North Carolina, for Appellants. Alice Janina Tejada, CITY OF RALEIGH, Raleigh, North Carolina, for Appellees. **ON BRIEF:** Bradley M. Risinger, FOX ROTHSCHILD LLP, Raleigh, North Carolina, for Appellants. John Wright, CRANFILL SUMNER, LLP, Charlotte, North Carolina, for Appellee City of Kannapolis, North Carolina. Nicholas S. Brod, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellees North Carolina Department of Public Safety and North Carolina State Highway Patrol Department. Stephanie H. Webster, CRANFILL SUMNER, LLP, Charlotte, North Carolina, for Appellee City of Salisbury, North Carolina.

_____

WILKINSON, Circuit Judge:

The plaintiffs in this case (Capitol Broadcasting Company, McClatchy Company LLC, and James S. Farrin, P.C.) want the defendants (the City of Raleigh, the City of Salisbury, the City of Kannapolis, the North Carolina Department of Public Safety, and the North Carolina State Highway Patrol Department) to release certain accident reports that the plaintiffs say they are entitled to under North Carolina state law. But the defendants have refused to turn over the requested reports, saying that they are prohibited from doing so by a federal privacy statute.

Rebuffed by the defendants, the plaintiffs have turned to federal court, asking for a declaratory judgment that the federal law does not apply. They now appeal the order of the district court dismissing their declaratory judgment action for lack of subject matter jurisdiction. As the parties have not raised a claim of diversity jurisdiction, their only avenue to the district court is through a federal question. Because we find that their complaint fails to plead such a federal question on its face, we affirm the judgment of the district court dismissing the case for lack of jurisdiction.

I.

A.

At the heart of this declaratory judgment action is the interplay between a handful of state and federal statutory provisions. We will start with the North Carolina Public Records Act (NCPRA). This statute instructs that "public records and public information compiled by the agencies of North Carolina government, or its subdivisions" are to be "the property of the people." N.C. Gen. Stat. § 132-1(b). Consequently, North Carolinians are

3

entitled to "obtain copies of their public records and public information free or at minimal cost unless otherwise specifically provided by law." *Id.*

North Carolina law provides more detailed instructions about the content and availability of some specific records. As relevant to this appeal, for instance, when a car accident occurs in the state, a law enforcement agency is required to investigate it and "make a written report" pursuant to forms or procedures specified by the North Carolina Department of Motor Vehicles (DMV). N.C. Gen. Stat. § 20-166.1(e), (h). These accident reports include information such as "[t]he cause of the crash," "[t]he conditions existing at the time of the crash," and "[t]he persons and vehicles involved." *Id.* § 20-166.1(h). The law enforcement agencies must return these completed accident reports to the North Carolina DMV. *Id.* § 20-166.1(e). State law specifies that "[t]he reports made by law enforcement officers and medical examiners are public records" which must be "open to inspection by the general public at all reasonable times." *Id.* § 20-166.1(i).

Now we move to the federal side of the ledger, where we encounter the Driver's Privacy Protection Act (DPPA). This statute forbids state DMVs from knowingly disclosing "personal information" to any person or entity. 18 U.S.C. § 2721(a)(1). Under the DPPA, "personal information" encompasses "an individual's photograph, social security number, driver identification number, name, address . . ., telephone number, and medical or disability information," but excludes "information on vehicular accidents, driving violations, and driver's status." *Id.* § 2725(3). The statute also broadly holds liable any party who "knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted [by the statute]." 18 U.S.C. § 2724(a).

4

Individuals whose personal information has been disclosed contrary to the dictates of the statute have a private right of action in federal district court and are eligible to recover damages from the wrongdoer. *Id.* § 2724. The statute does, however, include a number of exceptions; for instance, it permits disclosure of personal information "[f]or use by any government agency . . . in carrying out its functions." *Id.* § 2721(b)(1).

B.

It is at the intersection of the aforementioned provisions that the parties collide. Plaintiffs are two media organizations and a law firm that wish to obtain accident reports to which they claim they are entitled to under state law. Defendants are three North Carolina municipalities and two state public safety agencies, all of which supervise and control law enforcement agencies. These entities have refused plaintiffs' requests for the accident reports, claiming that the DPPA prohibits their release.

After being turned down by defendants, plaintiffs filed this action in federal district court. The complaint accused defendants of "refus[ing] to comply with the mandate of the [NCPRA] to make accident reports available for public inspection" because of their allegedly misplaced fear of DPPA liability. J.A. 6–7. Plaintiffs thus sought "a declaration that the [DPPA] does not bar a North Carolina law enforcement agency from releasing to the public, under applicable state laws, motor vehicle accident reports that contain the names and addresses of involved drivers." J.A. 6. According to the plaintiffs, their "access to these accident reports, which are public law enforcement records, is integral to the exercise of their First Amendment rights." J.A. 7. The complaint asserted that the district

5

court had subject matter jurisdiction "under the Declaratory Judgment Act," as well as "pursuant to 28 U.S.C. § 1331 because [the action] arises under the DPPA." J.A. 12.

The City of Raleigh moved to dismiss the action for lack of jurisdiction, and the district court granted the motion. *Capitol Broad. Co. v. City of Salisbury*, 2023 WL 4273636, at *1 (M.D.N.C. June 29, 2023). The court noted that there was "no suggestion here that th[e] [c]ourt might have diversity jurisdiction," and thus the only question before it was "whether it ha[d] federal question jurisdiction." *Id.* at *3. Because the right that the plaintiffs asserted was "a state law right" and "the DPPA [was] only relevant insofar as it [was] a potential federal defense," the court concluded it lacked federal question jurisdiction pursuant to the well-pleaded complaint rule. *Id.* at *5. The court also rejected plaintiffs' arguments that the complaint "present[ed] a substantial question of federal law insofar as they s[ought] to affirmatively assert their First Amendment rights," as "[t]he 92-paragraph [c]omplaint mention[ed] the First Amendment only twice," but "ma[de] clear that Plaintiffs believe[d] they [were] entitled to the documents 'as required by North Carolina law.'" *Id.* at *6. The court thus dismissed the action without prejudice. *Id.* Plaintiffs timely appealed.

## II.

We "review questions of subject matter jurisdiction de novo." *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 815 (4th Cir. 2004) (en banc). Applying the well-pleaded complaint rule for declaratory judgment actions, we find that this action fails to present a federal question on its face that is necessary to the disposition of plaintiffs' claims. Thus, the district court was right to dismiss it.

6

A.

The federal district courts "have jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The "settled interpretation of these words" is "that a suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution." *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152 (1908). It is not enough if the complaint "goes beyond a statement of the plaintiff's cause of action and anticipates or replies to a probable defense," even if that defense itself raises a federal question. *Gully v. First Nat. Bank*, 299 U.S. 109, 113 (1936). Rather, the federal nature of the controversy "must be determined from what necessarily appears in the plaintiff's statement of his own claim" unassisted by the anticipation of "defenses which it is thought the defendant may interpose." *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 10 (1983) (quoting *Taylor v. Anderson*, 234 U.S. 74, 75–76 (1914)). In short: look to the essential elements of the plaintiff's—and only the plaintiff's—claim. If there is not a federal ingredient therein, the district court generally lacks federal question jurisdiction. This rule, which is the first step to ascertaining federal question jurisdiction, is known as the well-pleaded complaint rule. *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 808 (1986).

The well-pleaded complaint rule applies where, like here, "the jurisdictional issue is whether a district court possesses subject matter jurisdiction of a declaratory judgment action purporting to raise a federal question." *Columbia Gas Transmission Corp. v. Drain*, 237 F.3d 366, 370 (4th Cir. 2001) (*Columbia Gas II*). Yet the declaratory judgment posture

7

necessitates we apply the well-pleaded complaint rule with a slight twist. We must conceptualize a world where declaratory judgment actions do not exist and then theorize the coercive suit that would have arisen between the same parties in such a reality. *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 672 (1950); *Franchise Tax Bd.*, 463 U.S. at 16. The theoretical suit could be one brought by the plaintiff against the defendant, or the suit could be one where the parties swap places. *See Columbia Gas II*, 237 F.3d at 370. Regardless of which roles the parties take on in the hypothesized coercive suit, if *that* suit would satisfy the well-pleaded complaint rule, then the overarching declaratory judgment action does too. *Id.*

While the reverse-engineering asked of courts in this context might seem strange, there are good reasons for it. The Supreme Court has recognized that "the operation of the Declaratory Judgment Act is procedural only." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937). In passing the Act, while "Congress enlarged the range of remedies available in federal courts," it "did not extend their jurisdiction." *Skelly Oil Co.*, 339 U.S. at 671. Therefore, to ensure that the Act is not used by district courts to wade into nonfederal waters, we must assure ourselves that subject matter jurisdiction would lie between the parties even in the absence of the Act.

### B.

With these principles in mind, we turn to the case before us. Plaintiffs seek a declaration that "the DPPA does not bar Defendants from making available to the public accident reports defined as public records under North Carolina law, in the manner prescribed by the NCPRA." J.A. 41. Recasting this suit as one for traditional coercive

8

relief, it is clear that the only feasible underlying action is one in which plaintiffs sued defendants to enforce their alleged rights under the NCPRA. The entire complaint raises an entitlement premised wholly upon state law. *See* J.A. 6 ("Defendants refuse to comply with the mandate of the [NCPRA]."); J.A. 18 ("[U]nder the NCPRA . . . Defendants have a statutory obligation to make accident reports available to the public."); J.A. 40 ("Defendants refuse to provide accident reports to Plaintiffs as required by North Carolina law."). The federal DPPA becomes relevant only insofar as it is an anticipated defense to the claims rooted in the state NCPRA. Indeed, the entire purpose of including the DPPA in the complaint is to preemptively foreclose defendants' argument that it prohibits release of the desired reports. *See* J.A. 13 (noting that "Defendants refuse to make available for public inspection accident reports . . . because they assert that the DPPA prohibits them from doing so," but contending that "the DPPA imposes no such bar.").

The complaint proclaims that it "arises under the DPPA," but merely saying something does not make it true. J.A. 12. There is no sense in which the complaint itself is grounded in the DPPA. Plaintiffs do not claim any rights to release stemming from the DPPA, and they do not assert that the DPPA requires defendants to take any affirmative actions. Nor could they. The DPPA expressly creates rights for one class of individuals only: those who have had their information impermissibly disclosed. 18 U.S.C. § 2724. Plaintiffs clearly do not belong within this class. They are seeking disclosure, the very opposite of claiming a breach of their privacy from a record's release. They thus would not be eligible to sue under any federal private cause of action under the DPPA. *See Merrell Dow*, 478 U.S. at 812 (noting that the "significance" of the lack of a federal private cause

9

of action could not "be overstated" in finding federal question jurisdiction was absent, as "it would flout congressional intent to provide a private federal remedy" in such a case).

Rather, plaintiffs invoke the DPPA only to argue that it does not prohibit defendants from complying with state-law obligations, thereby attempting to cut off defendants' anticipated line of argument before it can begin. Yet, it is well-settled that "a federal court does not have original jurisdiction over a case in which the complaint presents a state-law cause of action, but also asserts that federal law deprives the defendant of a defense he may raise." *Franchise Tax Bd.*, 463 U.S. at 10; *see also Chi. Trib. Co. v. Bd. of Trs. of Univ. of Ill.*, 680 F.3d 1001, 1005 (7th Cir. 2012) ("[T]he natural plaintiff in a claim arising under state law cannot use a declaratory-judgment action to litigate an anticipated federal defense in federal court."). That is precisely the situation we have here. The complaint therefore fails to raise a federal question on its face.

Resisting this clear-cut conclusion, plaintiffs engage in jurisdictional gymnastics to insist that they have satisfied the well-pleaded complaint rule. They assert that the underlying theoretical suit we must examine here is not the most obvious one, where plaintiffs seek to vindicate their rights under the NCPRA. Rather, according to plaintiffs, the proper reconceptualization is a scenario where the *defendants* brought *their own* declaratory judgment action against the plaintiffs to assert that the DPPA forbids them from releasing the desired accident reports. Because *this* inverted declaratory judgment action would allegedly arise under federal law, so too does the actual case we have before us, according to the plaintiffs' theory.

10

But this argument fails to understand the task at hand. When a court engages in the theoretical inquiry required by jurisdictional questions in declaratory judgment actions, the court necessarily must imagine a *traditional* (read: non-declaratory) action for coercive relief that could exist between the same parties. The idea is that jurisdiction can only exist "if the coercive action that would have been brought (*were declaratory judgments not available*) would have been within that jurisdiction." 13D Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3566 (3d ed. 2008) (emphasis added); s*ee also Franchise Tax Bd.*, 463 U.S. at 16 ("*Skelly Oil* has come to stand for the proposition that 'if, *but for the availability of the declaratory judgment procedure*, the federal claim would arise only as a defense to a state create action, jurisdiction is lacking.'" (emphasis added) (quoting 10A Charles Alan Wright et al., *Federal Practice and Procedure* § 2767 (2d ed. 1983))); *Leopard Marine & Trading Ltd. v. Easy St. Ltd.*, 896 F.3d 174, 182 (2d Cir. 2018) ("[I]f the defendant in a declaratory suit could have sued in federal court, seeking *non-declaratory relief* on the same claims pressed in the declaratory suit, then federal courts have jurisdiction over the declaratory action." (emphasis added)).

This excludes any consideration of a hypothetical declaratory judgment action as one that could confer federal question jurisdiction. To conclude otherwise would be to eviscerate the purpose of the imaginative exercise altogether, given that the point of reconceptualizing the suit into a traditional form of action is to ensure that the declaratory judgment posture does not inadvertently enlarge the jurisdiction of the federal courts. Thus, plaintiffs' attempts to use a potential declaratory judgment action by the defendants to establish jurisdiction here will simply not do.

11

Plus, even if we *could* consider a hypothetical declaratory judgment action by the defendants for jurisdictional purposes, the well-pleaded complaint rule would remain unsatisfied. This is because the action would still consist of defendants preemptively raising the DPPA as a defense against an impending state-law suit under the NCPRA. Such a declaratory judgment action cannot enter the federal courts through 28 U.S.C. § 1331. *See Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 248 (1952) ("Federal courts will not seize litigations from state courts merely because one, normally a defendant, goes to federal court to begin his federal-law defense before the state court begins the case under state law."). From whatever angle we look at this declaratory judgment action, then, it rests at bottom on state-law grounds.

Displeased with this outcome, the plaintiffs attack the results that inhere, urging that they are too absurd to be correct. In particular, the plaintiffs insist federal question jurisdiction must be present here because the case "turns entirely on a question of federal law" and "could be resolved without resort to any State law or principle." Appellants' Opening Br. 1, 14. But such consequences are the anticipated and sometimes unavoidable corollaries of the well-pleaded complaint rule. While the rule "may produce awkward results, especially in cases in which neither the obligation created by state law nor the defendant's factual failure to comply are in dispute, and both parties admit that the only question for decision is raised by a federal . . . defense," the rule has nonetheless "been correctly understood to apply in such situations." *Franchise Tax Bd.*, 463 U.S. at 12; *see also* 13D Wright & Miller, § 3566 ("[I]t is worth noting that the effect of the [well-pleaded complaint] rule, often, is to funnel to state courts cases in which the only issues to be

litigated are issues of federal law."). Thus, because the declaratory judgment action failed to satisfy the well-pleaded complaint rule, we find that the district court properly concluded it lacked jurisdiction.

C.

One final argument warrants mention. Plaintiffs try one last avenue into district court, arguing that federal question jurisdiction is proper because the affirmative claims in their complaint carry important First Amendment implications. Although they concede that their complaint "does not directly raise a claim under the First Amendment," they posit that constitutional concerns are baked into it, as "[t]he First Amendment creates a *right* to receive information vital to exercising protected speech," including the accident reports at issue. Appellants' Opening Br. 28–31. In other words, the argument goes, the First Amendment necessarily provides the backdrop to their state-law claims, so this case belongs in federal court.

But such atmospheric First Amendment concerns are not sufficient to create federal question jurisdiction. This is because even if there were valid First Amendment considerations at play—a subject on which we need not comment for purposes of jurisdiction—we could not say that they were "dispositive" in resolving the core dispute of the interplay between the NCPRA and the DPPA. *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 700 (2006). This case is best seen as a discrete dispute about a single state law and how its provisions may or may not be preempted by a federal law. While the complaint makes extensive arguments across its nearly 100 paragraphs about why the DPPA does not foreclose public access to the accident reports it seeks, its mere

two references to the First Amendment are highly general and simply tangential to the fundamental statutory interpretation questions in play. *See id.* (suggesting jurisdiction may be proper only where the federal issue is "an essential element" of the state-law claim and perhaps "the only . . . issue contested in the case"); *Capitol Broad. Co.*, 2023 WL 4273636, at *6 (describing the mentions of the First Amendment in the complaint as mere "passing remarks"). Given that the complaint does little to engage in any constitutional analysis at all, we cannot say that free speech and press rights are "in the forefront of the case and not collateral, peripheral or remote." *Merrell Dow*, 478 U.S. at 814 n.11 (quoting *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 470 (1957) (Frankfurter, J., dissenting)).

Thus "[t]he most one can say is that a question of federal law is lurking in the background." *Gully*, 299 U.S. at 117. "A dispute so doubtful and conjectural, [s]o far removed from plain necessity, is unavailing to extinguish the jurisdiction of the states." *Id.* In short, then, "[t]his case cannot be squeezed into the slim category" of state-law causes of action that can nonetheless be heard in federal courts. *Empire Healthchoice Assur.*, 547 U.S. at 701.

## III.

We think it appropriate in concluding to recognize the limited role of federal courts and the necessity of diligence in policing the outer limits of our power. As the Supreme Court has cautioned, "[t]o sanction suits for declaratory relief as within the jurisdiction of the District Court merely because . . . artful pleading anticipates a defense based on federal law," would undermine "the whole trend of jurisdictional legislation by Congress, disregard the effective functioning of the federal judicial system and distort the limited

14

procedural purpose of the Declaratory Judgment Act." *Skelly Oil Co.*, 399 U.S. at 673–74. The Court's directive illustrates that judicial authority can earn respect in its restraint, as well as in its exercise.

IV.

For the aforementioned reasons, the judgment of the district court is affirmed.

*AFFIRMED*

15